■ TOWN OF HUNTINGTON et al., Respondents, v SALVATORE ALBICOCCO et al., Appellants. (Action No. 1.) TOWN OF HUNTINGTON et al., Respondents, v NICK BROS. FUEL OIL CORP., Appellant. (Action No. 2.)—In consolidated actions, *inter alia,* to permanently enjoin defendants from completing the construction of a steel bulkhead and from depositing fill on underwater lands allegedly owned by the plaintiffs, the defendants appeal from so much of a judgment of the Supreme Court, Suffolk County, entered December 5, 1977, as (1) severed their counterclaim to declare the Marine Conservation Law of the Town of Huntington invalid, (2) directed them to apply to the State Department of Environmental Conservation for a permit with respect to the bulkhead work, and (3) directed them to apply to the Town of Huntington Department of Engineering, Building and Housing, for a permit with respect to the deposit of fill. Judgment modified, on the law, by deleting the third decretal paragraph thereof, which directs defendants to make an application to the State Department of Environmental Conservation, and substituting therefor a provision that defendants need not make such an application. As so modified, judgment affirmed insofar as appealed from, without costs or disbursements. The defendant Nick Bros. Fuel Oil Corp. (Nick Bros.) is the owner of a parcel of real property in the hamlet of Halesite, Town of Huntington, County of Suffolk, which abuts the navigable waters of Huntington Harbor. Title was acquired from defendants Albicocco and Nicoletto. Nick Bros. utilizes the parcel in its retail fuel oil business. On the property is a 500,000 gallon fuel oil storage tank which is capable of being supplied by barges. On another portion of the property is a dock used to off-load trap rock from barges that transport this stone from the Hudson River and Connecticut. It is the only such dock in the Town of Huntington. More than 20 years ago, defendants Albicocco and Nicoletto constructed a wooden bulkhead along the frontage of this property which faced the harbor. By 1973 the bulkhead had become so deteriorated that it had to be replaced; it was bulging and falling and behind it, within 80 feet, was the 500,000 gallon fuel oil storage tank. By February, 1974 the bulkhead was in even worse condition. Accordingly, a sheet steel bulkhead was designed to be erected just outside the old wooden bulkhead. Work was started immediately for fear the old bulkhead would collapse. As a precaution, the fuel oil was pumped out of the storage tank. The sheet steel bulkhead was placed in a straight line just outside the old wooden bulkhead. At some places it was 16 to 18 inches outside the old bulkhead and at the south end, to keep it straight, it extended some 6 to 10 feet out into the harbor. The void between

the new bulkhead and the old was filled with stone. Applications to obtain permits for this construction were sent to the United States Army Corps of Engineers and the New York State Department of Environmental Conservation. Approval to proceed was obtained from the Department of Environmental Conservation in a letter dated May 7, 1974, in which the local permit administrator notified the defendants that a moratorium permit was unnecessary in view of the fact that the present construction was for the replacement of an existing bulkhead. On September 15, 1975 a permit was also secured from the Army Corps of Engineers. The permit had been delayed because of the objections filed by the plaintiffs. However, at no time did the defendants apply for a permit from the Town of Huntington under its Marine Conservation Law. In our view, the trial court erred in directing the defendants to apply to the State Department of Environmental Conservation for a permit with regard to the bulkhead construction. Assuming, *arguendo,* that a permit would otherwise be required from the State for the bulkhead work, the record indicates that on May 7, 1974, the State Department of Environmental Conservation notified the defendants that no permit was necessary for the bulkhead construction. In reliance upon the foregoing, defendants continued their work on the bulkhead. To require them to obtain such a permit at this point with respect to the bulkhead work would be unfair and unduly burdensome. We note that our modification is based solely on this ground alone. In the absence of any cross appeal by the town, we decline to rule on the issue of whether the trial court was correct in holding that the State had pre-empted the town's Marine Conservation Law regarding bulkheads (cf. *Town of Islip v Powell,* 78 Misc 2d 1007). With respect to the directive of the trial court that the defendants apply to the Town of Huntington for a permit with respect to the fill work, defendants argue that the State has pre-empted the town's Marine Conservation Law. We disagree. ECL 25-0401 (subd 1) provides, in pertinent part: "The permit issued by the commissioner *shall be in addition to,* and *not in lieu of,* such permit or permits as may be required by any municipality within whose boundary such wetland or portion thereof is located" (emphasis supplied). (See, also, *People v Poveromo,* 79 Misc 2d 42, revg 71 Misc 2d 524.) Moreover, we cannot agree with the dissenter that the direction to apply for a fill permit is a useless formality, or that the record is inadequate to establish that a "watercourse or wetland" as defined in the town code is involved. Initially, the determination to issue a fill permit is for the town, rather than the courts, to make. No prejudice will accrue to the defendants during the pendency of their application. As regards the character of the land to be filled, it is our opinion that its character prior to the construction of the second bulkhead is controlling. Under the circumstances of the instant case, the requirement of a town permit for the fill work was adequately established. Latham, J. P., Gulotta and Shapiro, JJ., concur.

Suozzi, J., concurs insofar as the majority has deleted from the judgment that provision which directs defendants to make application for a permit to the State Department of Environmental Conservation with respect to bulkhead work performed by defendants, but otherwise dissents and votes to further modify the judgment by deleting therefrom that provision which directs defendants to make application to the Town of Huntington Department of Engineering, Building and Housing for a permit with regard to the defendants' deposit of fill, with the following memorandum: Both Trial Term and the majority are of the view that defendants have to apply to the Town of Huntington Department of Engineering, Building and Housing with respect to their proposed deposit of fill. I disagree. Except for the payment of

the $100 filing fee, the directive in the judgment that defendants apply to the Town of Huntington for a permit for the deposit of fill appears to be a futile and useless one. In view of the conceded emergency which necessitated the bulkhead work initiated by defendants, the court's failure to grant an injunction in favor of the town to have the bulkhead removed, and the court's specific finding that the crushed stone used as fill did not act as a pollutant, it is inconceivable that the town could present evidence at any future hearing conducted pursuant to said application, which would justify the denial of a fill permit, or which would persuade a court, following the denial of a permit, to grant an injunction and require the removal of the fill. Indeed, it would be a significant public hazard for either the town or any court to sanction the existence of a void ranging from 16 inches to 10 feet between these two bulkheads. Further, although the complaints contain allegations regarding defendants' violation of the town code in failing to obtain a permit with respect to fill, the town's case at the trial was concentrated and centered solely on the issue of bulkheads. Except for the possibility of proof from photographs, no testimony was presented by the town with respect to the filling of the area between the two bulkheads with crushed stones. In addition, there was a conspicuous absence of any testimony or claim that the area between the two bulkheads was either a "watercourse or wetland" as defined in the town code and which the town code was designed to protect. Accordingly, that part of the judgment directing defendants to apply to the town for a fill permit should be deleted. Further, it appears from the record that the validity of the ordinance relied on by the town in its complaints was called into question during the trial by the disclosure that it had a different numbering system than the ordinance which was officially adopted by the Huntington Town Board on June 30, 1970 and published according to law. This matter was brought to the trial court's attention by the defendants' attorney during the course of the trial. It was conceded by all the parties that the change was purely one of numbering and that the wording of the pertinent sections of the ordinance had not been changed. Accordingly, the attorney for the town argued that the change was not material and that it was not necessary for the town board to adopt a new resolution approving a renumbering of the ordinance's sections. In view of the fact that the defendants' attorney has not pursued this point on appeal, it is unnecessary to dwell at length on this issue. However, as Trial Term itself stated, the proper method to renumber the ordinance's sections is clearly "by subsequent resolution of the Town Board", and this method should be utilized in the future to avoid confusion and unnecessary litigation.