Leon D. Lazer, J.
At issue on these motions by the Town of Islip (“Islip”) for a preliminary injunction and to strike defenses from the answer is the power of local government units in Nassau and ¡Suffolk Counties to zone their waterfront lands and issue permits for piers, wharves and docks. The relevant portion of the Islip zoning ordinance provides that “ underwater [land] shall be considered as being in the same district as the abutting upland ’ ’ for a distance of 100 feet unless otherwise classified (Islip Code, § 68-12). The town has instituted an action to enjoin the defendants from renting docking *1008 facilities at that portion of their marina which is connected to and extends in front of their own adjacent residentially zoned property. The facts are not in substantial dispute.
The defendants own three contiguous parcels of land which front on the Connetquot River in Islip. One of the parcels is located in the Business I district where commercial marinas are a permitted use while the other two are located in the Residence A district where such uses are not permitted (Islip Code, §§ 68-45,68-46). On the business parcel, the individual defendants operate a commercial marina containing boat dockage, repair and fueling facilities. The second parcel is the site of the individual defendant’s home and the third is a vacant lot owned by the corporate defendant. The town asserts that the defendants store boats and boat trailers on the latter two parcels and have installed in the waters in front of the residence premises floating docks to increase the mooring capacity of their marina. One of the docks is attached to the commercial marina pier which' is built out from the business parcel and extends in a westerly direction parallel to and directly in front of the residentially zoned shore. The other dock is attached directly to the bulk-heading of the residential parcel and runs parallel with it. On March 21, 1972 the Board of Appeals of Islip denied defendants á special exception permit to utilize these docks on the ground that they had been built on town-owned underwater lands in violation of the zoning ordinance.
In opposition to the instant motion defendants assert, inter alia, that the State has pre-empted regulatory authority over navigable waterways and the town is without authority to control such waterfront uses.
The legislative power of a municipality stops at its boundary line (1 Rathkopf, Law of Zoning and Planning, p. 25-1) and albsent a restrictive statute it may zone underwater land within its borders (1 Anderson, American Law of Zoning § 8.13; 2 Anderson, New York Zoning Law and Practice, § 19.02; 1 Rathkopf, Law of Zoning and Planning, p. 25-1 [1973 Supp.]). Such zbning regulations exist in numerous municipal ordinances (see, e.g., Matter of Taxpayers’ Assn. of South East Oceanside v. Board of Zoning Appeals of Town of Hempstead, 301 N. Y. 215; Huguenot Yacht Club v. Lion, 43 Misc 2d 141; Matter of Milton Point Assn. v. Clark, 14 Misc 2d 633; City of Rye v. Boardman, 11 Misc 2d 293; 71 Op. St. Comp., 684). The settled doctrine of local control of waterfront uses was seemingly shaken by the holding in Erbsland v. Vecchiolla (35 A D 2d 564, affd. after remand sub nom. Erbsland v. Rubin, 33 N Y 2d 787). There, in a case *1009 involving the efforts of a local boat yard to install a floating mooring (apparently attached to the State-owned bottom) out from the foreshore in Long Island Sound, the Appellate Division of the Second Department held that municipal zoning jurisdiction did not extend to uses upon a navigable body of water. The court declared that navigable waters (p. 565) “ are within the sole jurisdiction and control of the State,” except to the extent of any delegation of powers to the .United States, with the State having title to land thereunder. In support of the latter proposition, the court cited section 7-a of the State Law which relates to jurisdiction and ownership of offshore waters and lands thereunder and includes only the Great Lakes, the marginal sea and the high seas. Presumably, Milton Harbor in Long Island Sound, which the court found to be outside the regulatory power of the City of Eye, falls within one of the three listed categories of waters, but Erbsland speaks also of navigable waters “ within the state’s control and jurisdiction,” a much broader category of waters. The case has been construed as a bar to municipal regulation of commercial marinas on the Hudson River (Piesco v. di Francesca, 72 Misc 2d 128) although on its facts it dealt with a floating mooring, 54 feet from the foreshore and attached to the State-owned bottom of the Long Island Sound. Here we deal with docks which float but which are attached to the foreshore directly or indirectly. A careful reading of the Erbsland opinion shows an intent not to affect the zoning of piers and wharfs and statutory analysis demonstrates that even the broadest interpretation of Erbsland precludes its application to Nassau and Suffolk Counties.
The Navigation Law provides for State control of navigation and use of “ navigable waters of the state ” (Navigation Law, § 1). “Navigable waters of the state” are defined in subdivision 4 of section 2 as “ all lakes, rivers, streams and waters within the boundaries of the state and not privately owned, which are navigable in fact or upon which vessels' are operated, except all tidewaters bordermg on and lying within the boundaries of Nassau and Suffolk Counties.” [Emphasis supplied.] The word “tidewater” means waters, whether salt or fresh, wherever the ebb and flow of the tide from the sea is felt (65 C. J. S., Navigable Waters, § 1). It is usually not applicable to the open sea but to coves, bays and rivers (Black’s Law Dictionary [4th ed.]). The Connetquot is a tidal river bordering on and lying within the boundaries of Suffolk County and the Navigation Law definition would appear to exclude it from State control.
*1010 The exclusion of Nassau and Suffolk County tidewaters from the regulatory provisions of the Navigation Law dates at least from 1941 when the section exempted waters ‘ ‘ connected by navigable channels with tidewater” (L. 1941, ch. 941; see People v. Hart, 206 Misc. 490; People v. Bianchi, 3 Misc 2d 696). In 1956, subdivision 4 of section 2 was amended to provide that navigable waters do not include “ tidewaters lying south of the parallel of the forty-first degree of north latitude and Long Island sound ” (L. 1956, ch. 596, § 1). The forty-first parallel runs at angle north of most of Long Island, cutting south at the eastern end which juts into the ocean. In 1959 the exception was amended to read “ waters of Long Island Sound lying within the boundaries of * * * Nassau and Suffolk Counties ” (L. 1959, ch. ,840). In 1965 the reference to “waters of Long Island Sound lying within the boundaries of Westchester county” was deleted (L. 1965, ch. 168, § 1) leaving only the tidewaters of Nassau and Suffolk immune from the operation of the Navigation Law. It is the effect of this enduring exemption upon the language of the Environmental Conservation Law (“ ECL ”) which leads to the conclusion that the waterways provisions of Islip’s zoning ordinance may continue to stand.
Section 32 of the Navigation Law (L. 1965, ch. 955, § 9) reads as follows: “ § 32. Construction of structures in or on navigable waters. It shall be unlawful to construct, in the navigable waters of the state, any wharf, dock, pier, jetty, or other type of structure without first obtaining a permit therefor in conformity with the provisions of section four hundred twenty-nine-c of the conservation law.”
Subdivision 1 of section 15-0503 of the Environmental Conservation Law, which is the identical successor to section 429-c of the Conservation Law states in part that no “ dock, pier, wharf or other structure, temporary or permanent, used as a landing place on ¡waters, shall be erected, reconstructed or repaired * * * without a permit ” [from the Department of Environmental Conservation].
The interaction of the two statutes has a lengthier history than their current language indicates. Prior to 1960, the Navigation Law was administered by the Superintendent of Public Works (Navigation Law, § 10) and. the related provisions in the Conservation Law were also administered by him rather than by the Conservation Commissioner (see, e.g., Conservation Law, § 948 which provided, inter alia, that the public works superintendent be afforded notice of construction or reconstruction of docks, wharves, jetties, piers or other structures “ used *1011 as a landing place on waters ” [repealed L. 1965, ch. 955, § 3]). In 1960, administration of the Navigation Law was transferred to the Conservation Commissioner (now the Department of Environmental Conservation) by an amendment to section 30 of the Navigation Law which provided that the commissioner “ shall have jurisdiction over navigation on the navigable waters of the state and, except as otherwise provided, shall enforce the provisions of this chapter ” (L. 1960, ch. 304). A subsequent amendment to section 32 of the Navigation Law (L. 1965, ch. 955) provided that permits for construction of any wharf, dock, pier, jetty or other type of structure (which were formerly issued by the Superintendent of Public Works) were to be obtained in conformity with section 429-c of the Conservation Law (now Environmental -Conservation Law, § 15-0503). Section 32 further provides (as it has since 1941) that it shall be unlawful to construct such structures ‘1 in the navigable waters of the state ” without such a permit. Thus the authority transferred exempted tidewaters in Nassau and Suffolk Counties by virtue of the definition in subdivision 4 of section 2 of the Navigation Law.
Section 429-c of the Conservation Law (now Environmental Conservation Law, i§ 15-0503) does not, however, contain the restrictive phrase “navigable waters of the state,” referring instead to “waters.” The word “ waters ” is broadly defined in the statute and includes “ rivers ” (Environmental Conservation Law, § 15-0107). The Attorney-General has interpreted the omission of the term “navigable waters” to indicate a legislative intent that the permit requirement of section 15-0503 of the Environmental Conservation Law includes structures erected in tidewaters in Nassau and Suffolk. He is particularly impressed by the fact that section 429-b of the Conservation Law (now Environmental Conservation Law, § 15-0505) a companion statute which relates to permits for excavation or fill, contains the phrase “navigable waters of the state” (1966 Opns. Atty. Gen. 16). The latter section was recently interpreted by the Appellate Term, Ninth and Tenth Judicial Districts, in People v. Poveromo (79 Misc 2d 42, revg. People v. Poveromo, 71 Misc 2d 524) as not applying to tidewaters in Nassau and Suffolk so that the Town of Smithtown could require permits for the dumping of fill in the Nissequogue River (see, also, People v. Gibson & Cushman, 64 Misc 2d 138). The Attorney-General’s attempt to distinguish section 429-c of the Conservation Law from section 429-b is baseless. He reads section 429-b to allow without a permit the placing of fill, including *1012 “ crib .work of wood, timber, logs,, concrete or metal * * * bulkheads and cofferdams of timber sheeting, bracing and piling of steel sheet piling or steel H piling ” in tidal waters of Nassau and Suffolk but interprets section 429-c to preclude construction of a pier or wharf beyond 40 feet from the foreshore in the same tidal waters without a permit. There is no rational basis for the Attorney-General’s distinction between these two sections.
Because the cited sections of the Navigation Law and the ECL deal with the same subject matter (and indeed they both delegate authority, to the same public official to regulate that subject matter) they must be construed in pari materia (People ex rel. Doscher v. Sisson, 222 N. Y. 387; Matter of Farrell v. Board of Health of City of Oswego, 243 App. Div. 332). The rule that statutes dealing with the same subject matter should be read together as far as possible applies, with particular force where the two statutes are enacted at the same session of the Legislature (City Bank Farmers Trust Co. v. Ardlea Corp., 267 N. Y. 224). In 1965, section 32 of the Navigation Law was amended to transfer regulatory authority over piers, docks, wharves and other structures, in the navigable waters , of the State to the conservation commissioner and at the same session of the Legislature and in the very same enactment (L. 1965, ch. 955, | 7) the Conservation Law was amended by the adoption of section 429-c containing reference to “ waters ” only. Had the Legislature intended to abolish the longstanding exemption for tidewaters in Nassau and Suffolk Counties, by use of the term “ waters ” instead of “navigable waters ” in section 429-c of the Conservation Law, it could have removed the latter term from section 32 of the Navigation Law when it amended it. To disregard an exemption so clearly expressed and so long maintained by focusing on the word “ .waters ” would be to thwart the Legislature’s obvious intent. The tidewaters of Nassau, and Suffolk have been and continue to be exempted from the State’s jurisdiction over navigation. Any other “ waters ” in the two counties have not been exempt in the past and they are not now. That portion of defendants ’ dock which is attached directly to the residential bulkhead is beyond the. jurisdiction of the Department of Environmental Conservation by any interpretation because section 15-0503 of the Environmental Conservation Law excludes from its ambit docks less than 40 feet from the shore.
The Legislature has recently extended State regulatory authority in the Tidal Wetlands Act (L. 1973, ch. 790) but that statute expressly provides that the State’s regulation “ shall be *1013 in addition to, and not. in lieu of ” permits as may be required by municipalities. This coexistence represents a sound policy which maintains local zoning • control while preserving certain prerogatives to the State. The wisdom of1 such a policy as it relates to tidal waters in Nassau and Suffolk Counties is for the Legislature and not for this court.
The defendants make a further assertion that the construction and use of the docks in issue is a normal exercise of their riparian rights which the town may not restrict by its zoning ordinance. It is elementary that riparian owners have the right of access to navigable waters including the right to construct a dock (Crance v. State of New York, 284 App. Div. 750, revd. on other grounds 309 N. Y. 680). These rights have been defined to include: 1) use of water for general purposes as bathing and domestic use; 2) wharfing out to navigability; 3) access to navigable waters (Hilt v. Weber, 252 Mich. 198) and it is the latter two uses which are relevant to the issues at hand. If the wharf and the access to navigable water are commercial in nature, then use of the residential upland as accessory to such uses would constitute a violation of residential restrictions (1 Rathkopf, Law of Zoning and Planning, p. 25-1 [Supp.]; cf. City of Yonkers v. Rentways, 280 App. Div. 821, affd. 304 N. Y. 499). Riparian rights are an extension of the rights of abutting upland ownership and they are subject to the same limitations. The defendants’ use of commercial docks strung out in front of residentiajly zoned property is not an extension of the riparian rights of their residential ownership and it achieves no exemption from residential zoning restrictions.
As a separate defense the defendants assert that the instant issues have already been determined in criminal proceedings instituted by the town and are therefore res judicata. It is true that such proceedings were decided in defendants’ favor on the ground that the zoning power was pre-empted by the State. Nevertheless, the defense of res judicata is without merit. Neither a conviction (Dalton v. VanDien, 72 Misc 2d 287) nor an acquittal (Reilly Constr. Corp. v. City of New York, 70 Misc 2d 651, affd. 25 A D 2d 953) of a criminal charge is a bar to a civil action by the government, arising out of the same facts on which the criminal action was based. The town is empowered by section 135 of the Town Law to enforce its ordinances by both a criminal action and an action for an injunction (Incorporated Vil. of .Westbury v. Samuels, 46 Misc 2d 633).
The town has demonstrated a clear legal right to injunctive relief and is entitled to a preliminary injunction (Town of South *1014 east v. Gonnella, 26 A D 2d 550, app. dsmd. 18 N Y 2d 727). It is also entitled to an order striking the affirmative defense: 1) that the complaint fails to state a cause of action; 2) that the ordinance is ultra vires the town’s authority; 3) that the town has elected its remedy; and 4) that this action is barred by the prior criminal proceeding and its pending appeal. The defense that the ordinance is applied in a discriminatory manner raises an issue of fact precluding the motion to strike it.
The motion for a preliminary injunction is granted and the motion to strike the affirmative defenses is granted to the extent indicated.