OPINION OF THE COURT
Meyer, J.
Interpreted in light of the setting in which imposed and the language used, the restrictive covenant in plaintiffs’ predecessor’s deed limiting use of its land to erection of a hydroelectric plant ran with the land as to both benefit and burden. Because that covenant renders the land wholly useless under present circumstances, plaintiffs are however, entitled to judgment extinguishing the covenant pursuant to section 1951 of the Real Property Actions and Proceedings Law. Damage to the dominant land not having been shown, the judgment of extinguishment properly awarded defendant no damages. However, the judgment improperly reserved for future determination the issue of damages to an easement over the servient land also held by the owner of the dominant land. Plaintiffs have not sought extinguishment of the easement and defendant, as easement owner, as distinct from landowner, is not entitled to damages for extinguishment of the restrictive covenant. The order of the Appellate Division should, therefore, be modified by deleting therefrom so much thereof as preserved the right of defendant hereafter to seek damages for extinguish *259 ment of the covenant.[1] As so modified, the order should be affirmed.
William Bradford originally owned land on both sides of the Neversink River in Sullivan County. In 1923 he sold the east bank land to Alfred J. Crane, retaining for himself exclusive hunting and fishing rights over it. At the same time he sold part of the west bank land to Crane under a deed restricting its use “by [Crane] his heirs, executors and assigns solely for the erection of Hydroelectric and generating plants and appurtenances, transmission lines, dams, penstocks, conduits or other structures appurtenant to the proper development and utilization of the water power of the portion of the Neversink River and Bushkill Creek above described or other water power uses and purposes, including houses for employees” but reserved to himself exclusive hunting and fishing rights over that part of the west bank land conveyed. In 1927 Crane conveyed the restricted property, subject to the covenant, to Rockland Light and Power Company, now known as Orange and Rockland Utilities, Inc. That company and Clove Development Corporation, its wholly owned subsidiary which now holds title to the west bank property originally deeded to Crane, are the plaintiffs in this action.
Bradford continued to hold the remaining west bank land, contiguous to the restricted parcel transferred to Crane. Bradford died in 1934 and in 1940 that property was conveyed by his successors in interest, ultimately coming to be held by Philwold Estates, Inc.[2] Philwold Estates, Inc., was owned by Philwold Company, a partnership in which defendant Wechsler had an interest. In 1968 Wechs *260 ler withdrew from the partnership receiving for his interest in that company 2,325 acres of the west bank land that had been held by Philwold Estates, Inc., together with the hunting and fishing rights in the land deeded by Bradford to Crane which Bradford had reserved.
Plaintiffs’ complaint seeks judgment declaring that the restrictive covenant was personal to Bradford and, therefore, is not enforceable by the successors to Bradford’s other real property, or in the alternative that the restrictive covenant be extinguished pursuant to section 1951 of the Real Property Actions and Proceedings Law. Special Term dismissed the action, without reaching the merits, holding it barred by limitations and rejecting plaintiffs’ argument that the statute was tolled because plaintiffs had possession and undisputed title to the property.
The Statute of Limitations defense was, however, swept aside by the Appellate Division because plaintiffs’ title to the property was unchallenged, the dispute involving only the enforceability of the restrictive covenant. The court held that the covenant ran with the land and was, therefore, enforceable by defendant, but concluded that it should be extinguished because it found, for reasons hereafter detailed, that the covenant currently serves no purpose and renders plaintiffs’ land valueless. Concluding that defendant had failed to prove any damage resulting from the extinguishment of the easement, the Appellate Division awarded no damages, but provided that defendant could seek damages for any injury to his land which might occur in the future as a result of the extinguishment of the restrictive covenant.
We agree (1) that the action is not barred by limitations or laches, (2) that the benefit as well as the burden of the covenant runs with the land, (3) that the Appellate Division properly concluded that the covenant should be extinguished pursuant to section 1951 of the Real Property Actions and Proceedings Law, and (4) that defendant’s proof did not entitle him to damages for ex-tinguishment of the covenant. We disagree, however, with the Appellate Division’s reservation to defendant of the right to seek future damages as a result of the extinguish *261 ment of the covenant and conclude that, the hunting and fishing easement not being involved in this action, the only-right that defendant Wechsler retains is to enforce such easement rights as he has should there be a future interference with his reasonable enjoyment of the easement,
I
Plaintiffs, as record owners of the property subject to the restriction, seek removal of the restriction either because it was personal to Bradford and did not accrue to later titleholders of the dominant land or because, if it did, circumstances are now such as to permit them to invoke the extinguishment provisions of section 1951 of the Real Property Actions and Proceedings Law. The restriction, as distinct from the hunting and fishing easement which is not involved in this action, gave neither Bradford nor any successor in title of his any right to go upon the servient or restricted land. At best it entitled him or them to enjoin plaintiffs from using the restricted land for a purpose outside the scope of the restriction.
Plaintiffs, as the holder of legal title, were presumptively entitled to possession (see RPAPL, § 311) and with respect to one in defendant’s position, who neither claims nor exercises any possessory right to the land, should be treated no differently as to limitations than one who is actually in possession. Considered in this light, removal of the restriction is no different than removal of a cloud on title, as to which the law is well settled that the “right is never barred by the Statute of Limitations. It is a continuing right which exists as long as there is an occasion for its exercise” (Ford v Clendenin, 215 NY 10, 16; see Gifford v Whittemore, 4 AD2d 379, 385). The purpose of a Statute of Limitations is to put an end to stale claims, not to compel resort to the courts to vindicate rights which have not been and might never be called into question. The requirement of prompt action is imposed as a policy matter upon persons who would challenge title to property rather than those who seek to quiet title to their land. Accordingly, we conclude, as did the Appellate Division, that neither aspect of the action is time barred. We agree also, for the reason *262 stated by the Appellate Division, that laches could not bar the action.
II
Whether a covenant restricting real property is personal or runs with the land depends on three factors: (1) whether the parties intended its burden to attach to the servient parcel and its benefit to run with the dominant estate, (2) whether the covenant touches and concerns the land, and (3) whether there is privity of estate (Neponsit Prop. Owners’ Assn. v Emigrant Ind. Sav. Bank, 278 NY 248, 255). Applying those tests we agree, though the question is not entirely free from doubt, with the Appellate Division’s conclusion that the covenant under consideration ran with the land.
There is little question that the parties to the 1923 conveyance intended that the burden of the restriction run with the land; the deed of conveyance expressly binds Crane, and “his heirs, executors, and assigns.” Defendant argues, however, that the deed did not expressly state that the covenant was to be enforceable by Bradford’s successors and assigns and that Bradford died in 1934. The rule in this State has long been that it is not “essential that the assignees of the covenantor should be named or referred to” (Hodge v Sloan, 107 NY 244, 251) and that there is a presumption that the insertion of a restriction “was for the purpose of protecting rights, which the grantor had in adjacent property” (Post v Weil, 115 NY 361, 372). As Professor Powell suggests (5 Powell, Property, par 673, at p 169), among the factors favoring a finding that the benefit was intended to run are (1) retention of adjacent land by the promisee-grantor and (2) the fact that the covenant benefits the retained land or renders it more valuable. Here Bradford did retain adjacent property on the west bank of the Neversink River. The covenant can also be considered beneficial to Bradford’s retained land in that Bradford precluded the possibility of objectionable uses on adjacent property. Finally, the very fact that Bradford retained for himself and his successors the right to hunt and fish on the burdened property suggests that the parties intended that *263 the property remain unspoiled[3] to protect these rights. Thus, the terms of the conveyance indicate that the parties intended that both the burden and the benefit of the covenant would run with the land.
The second requirement is that the covenant must “touch” or “concern” the land if it is to run with the land (Neponsit Prop. Owners’ Assn. v Emigrant Ind. Sav. Bank, supra, at p 255). This covenant touches or concerns the land because it directly affects the uses to which the land may be put and substantially affects its value (see id., at pp 258-260; 5 Powell, Property, par 675, at pp 182-183).
The final requirement is that there be privity of estate between the owner of the burdened property and the party seeking- to enforce the covenant. The concept of privity of estate has been traced to the nonassignability of choses in action at early common law, which necessitated the search for a special relationship between the parties to the covenant if the burden and benefit were to devolve to successors (5 Powell, Property, par 674, at p 172). Originally developed in actions at law, the privity concept required the existence of a tenurial relationship between the parties to the covenant, such as that existent between landlord and tenant or life tenant and remainderman (see, e.g., Spencer’s Case, 5 Coke Rep 16a; 5 Powell, Property, par 674, at p 172). However, in Keppell v Bailey (2 My & K 517) it was held that the running of burdens as between owners in fee was a violation of the public policy against encumbering the land barring actions at law. Eventually the concept of privity of estate took on a different meaning and now the party seeking to enforce the covenant need show only that he held property descendant from the promisee which benefited from the covenant and that the owner of the servient parcel acquired it with notice of the covenant (see Neponsit Prop. Owners’ Assn. v Emigrant Ind. Sav. Bank, supra, at p 261).
In the case at bar, defendant Wechsler holds west bank property descendant from Bradford and consequently he *264 has sufficient privity of estate to entitle him to enforce the restrictive covenant. Accordingly, so much of plaintiffs’ action as seeks a declaration that the restrictive covenant was personal to Bradford and did not pass to defendant Wechsler is without merit.
Ill
Subdivision 2 of section 1951 of the Real Property Actions and Proceedings Law authorizes a court in any action seeking relief against a restrictive covenant or a declaration with respect to its enforceability to cause its extinguishment “if the court shall find that the restriction is of no actual and substantial benefit to the persons seeking its enforcement or seeking a declaration or determination of its enforceability, either because the purpose of the restriction has already been accomplished or, by reason of changed conditions or other cause, its purpose is not capable of accomplishment, or for any other reason” but requires payment to the party who would otherwise be entitled to enforcement of the covenant of such damages as he will sustain from its extinguishment.
Plaintiffs point out that in 1940 while the servient parcel was held by Rockland Light and Power Company, the City of New York condemned all of Rockland’s riparian rights in the Neversink River, that plaintiffs no longer have the right to use the servient parcel for hydroelectric purposes, and that as presently restricted, the land can be used for nothing else.
Defendant Wechsler argues, however, that the statute empowers a court to extinguish a restrictive covenant only when it no longer has value to the person who seeks to enforce it and that the restrictive covenant has value to him because it enhances his hunting and fishing rights and keeps the property near to his unspoiled. That the land can no longer be used for hydroelectric purposes does not, according to defendant Wechsler, diminish the value to him of the restrictive covenant.
The background of the statute is set forth in the 1958 Report of the Law Revision Commission which includes its Recommendation to the Legislature Relating to Recording, Extinguishment and Modification of Certain Restrictions *265 on the Use of Land (NY Legis Doc, 1958, No. 65, at p 211). That report makes clear that restrictive covenants were intended to be subjected to the doctrine of relative hardship (at p 235), that “the public interest in the marketability and full utilization of land requires that there be available to owners of parcels burdened with” outmoded restrictions an “economical and efficient means of getting rid of them” (at p 254), that restrictions that “purport to prohibit virtually any use whatever * * * would be void on the ground that they were repugnant to the estate granted, or contrary to public policy, or unreasonable” but that few restrictions were of such drastic nature (atp 255), that New York courts for many years had applied the doctrine of balancing interests to nonforfeiture covenants, refusing injunctive relief and in some cases granting damages instead (at pp 263-266), but that there was need for an extinguishment statute because of procedural and other difficulties that would otherwise be encountered by landowners subject to restriction (at pp 235, 264,270, 317-318).
Section 1951, which as adopted is in the exact words recommended by the Law Revision Commission, must be construed in light of that legislative history. So construed, we agree that the restriction in issue was properly extinguished.
Foremost in the factors to be considered is the fact that if the covenant is enforced there is no use whatsoever to which the restricted land can be put by plaintiffs, for the restriction limits them to one single use and that use is, by reason of the city’s condemnation, impossible. Plaintiffs would thus be required to maintain the land in such manner as to avoid liability for injury to the users of it under the hunting and fishing easement and pay taxes on it but could make no other use of it. Bearing in mind that, as the Law Revision Report suggests, such drastic limitation may well be void as against public policy and that both the background of the statute and its wording (“by reason of changed conditions or other cause, its purpose is not capable of accomplishment, or for any other reason” [emphasis supplied] ) we have no hesitancy in concluding that the impossibility of constructing a hydroelectric plant (the building of which, though not required by the express wording *266 of the conveyance to Crane, was practically compelled by the restriction imposed and was clearly in the contemplation of the parties to the grant creating the restriction) was sufficient to trigger the power of extinguishment, if on balance that appeared to be the equitable course.
Nor do we find any error of law in the Appellate Division’s conclusion that on balance the restriction should be extinguished. The issue is not whether Wechsler obtains any benefit from the existence of the restriction but whether in a balancing of equities it can be said to be, in the wording of the statute, “of no actual and substantial benefit” (emphasis supplied). Defendant Wechsler argues that the value of both his remaining land and his hunting and fishing easement are enhanced if plaintiffs’ property is kept in unspoiled condition. As to the land, Wechsler presented general opinion evidence indicating that its value would be enhanced, but nothing from which the importance or substantiality of that benefit could be measured, nor any dollars and cents proof by which it could be quantified. Measured against the burden to plaintiffs of maintaining land of which no use can be made, we cannot say that the Appellate Division erred in concluding that enhancement in value of the remaining land was not substantial.
With respect to the value enhancement of Wechsler’s hunting and fishing rights, the simple answer is that they have not been affected by this proceeding in any way that the law should recognize. Wechsler retains those rights and he or his successors in title will be entitled should there be an interference with the reasonable enjoyment of the easement to take legal action to enjoin or obtain damages for the interference, or both (see Bakeman v Talbot, 31 NY 366). Though conceptually the easement rights may bring a higher price (assuming them to be salable) with the restriction in existence than without it, it cannot be said to be an error of law for the Appellate Division to have concluded (the more particularly so in the absence of proof in dollars and cents terms of the difference in value) that, since Wechsler continues to hold them and the right to enforce them without actual diminution, the theoretical diminution was not such a substantial benefit as to stand in the way of judgment of extinguishment.
*267 IV
What has been said so far suggests the conclusion as to damages.
A.
Defendant was afforded an opportunity to offer proof as to the damages he would suffer as a result of the extinguishment of the restrictive covenant, but, as already noted, failed to establish damages in quantifiable terms to his remaining land from the extinguishment of the restriction.
What the statute contemplates is an award of “the sum of money, if any, to which they [owners of the benefited land] are entitled in exchange for a complete extinction of the restrictions” (1958 Report of NY Law Rev Comm, at p 269), inclusive of both damages up to the time of trial and damages in the future. (id., at p 266). Having failed to avail himself of the opportunity, defendant is barred from seeking damages in the future for injury to his real property. It was, therefore, proper to deny a present damage award but error to reserve to defendant the right to bring an action in the future seeking such damages.
B.
As noted above, however, defendant retains the hunting and fishing rights to which the easement entitles him. Should plaintiffs or some future holder of the land subject to the easement interfere with those rights in the future, Wechsler or his successors in interest to the easement will have the right to bring an appropriate action as he or they may be then advised.
The order appealed from should, accordingly, be modified as above indicated, and, as so modified, should be affirmed, with costs.
Chief Judge Cooke and Judges Jasen, Gabrielli, Jones, Wachtler and Fuchsberg concur.
Order modified, with costs to Orange and Rockland Utilities, Inc., in accordance with the opinion herein and, as so modified, affirmed.

. Of course, that deletion will not affect defendant’s right to take such action as he deems proper to enforce his easement, should plaintiffs or any successor of plaintiffs use the land subject to the easement in such a way as to interfere with the reasonable enjoyment of it by defendant or his successors, but that right, if he has it, arises from the easement and exists, if at all, independently of the judgment in this action. Since the present action does not seek to extinguish the easement, we express no opinion as to its validity or enforceability.

. Estates conveyed a part of its land to Federation of Jewish Philanthropies, but it is unnecessary to consider the rights of the latter since it received no part of the reserved rights and in any event has conveyed its interest in the reservation to plaintiff Clove Development Corporation.

. Plaintiffs suggest that the hydroelectric use is hardly ideal for purposes of protecting the fishing right, but the fact remains that it is better than many other conveivable uses and keeps the burdened property relatively unspoiled.