GUISEPPE ROSSI, Respondent, v HAROLD SIMMS et al., Appellants.

HAROLD SIMMS, Third-Party Plaintiff-Appellant-Respondent, v 410-57 CORPORATION, Third-Party Defendant-Respondent-Appellant.

First Department, August 28, 1986

APPEARANCES OF COUNSEL

*Bruce O. Karp* of counsel *(Blumenthal & Lynne,* attorneys), for respondent.

*Steven Wimpfheimer* of counsel *(Wimpfheimer & Sherman,* attorneys), for appellants and third-party plaintiff-appellant.

*Stuart Abrams* of counsel *(Finkelstein Bruckman Wohl & Rothman,* attorneys), for third-party defendant-respondent.

## OPINION OF THE COURT

WALLACH, J.

This appeal requires us to consider the scope of discretion vested in the board of directors of a residential cooperative to reject a potential buyer for a professional-use apartment, and further to determine, in this somewhat unusual setting for such a controversy, whether a written agreement between the board and the selling tenant executed 20 years before the proposed sale constitutes a covenant running with the land, or rather a covenant personal to him.

This litigation originated in a contract of sale entered into by defendant and third-party plaintiff Dr. Harold Simms for the sale by Simms to plaintiff, Dr. Guiseppe Rossi, of the shares of stock and assignment of the proprietary lease pertaining to apartment 1-A in the building owned by third-party defendant 410-57 Corporation (Corporation). The Corporation, a residential cooperative, consists of some 50 stockholders. Dr. Simms acquired his apartment in May 1966 for a purchase price of $13,000 and for the next two decades operated his

professional office for the practice of dentistry there. At the time Dr. Simms acquired his shares and proprietary lease from the Corporation he also obtained the following letter from the Corporation's secretary:

"May 20, 1966

"410 East 57th Street
"Apartment 1-A

"Dear Dr. Simms:

"In connection with the proprietary lease covering the above premises which you are about to take by assignment and assume, it is understood that the said premises will be used for professional purposes.

"It is further understood that there will be no additional charge for such use.

"Very truly yours,

"410-57 CORPORATION
"AHP:MJ              Allen H. Plough
"Secretary"

Thus, for the entire time of Dr. Simms' occupancy of the apartment he has paid a monthly maintenance charge of only $495 per month. The contract of purchase and sale between these two dentists called for a purchase price of $225,000 and a contract deposit of $22,500, with final closing subject to approval by the board of directors of the Corporation as required in the proprietary lease (Lease). It sufficiently appears from the affidavits submitted in connection with the motion for summary judgment by all parties that the reason approval of the Simms-Rossi sale by the board of directors was not forthcoming was that the board sought, and Dr. Rossi refused to agree to, the payment of a $1,250 per month surcharge for his professional use of the apartment as a dental office (it may be noted that the only other professional apartment in the building, also located on the first floor, is surcharged $1,000 a month in addition to the regular maintenance).

With action by the board in limbo, Dr. Rossi commenced the main action for recovery of his contract deposit against Dr. Simms and his counsel who held the $22,500 in escrow. Special Term granted summary judgment in favor of Dr. Rossi for the return of his deposit and this disposition is not challenged on this appeal. Before us now are Dr. Simms' conten-

tions in his third-party complaint against the Corporation that the action of the board was in breach of its fiduciary duty to him, and that the attempt by the board to interpose a surcharge upon Dr. Simms' contract vendee, Dr. Rossi, violated the letter of May 20, 1966 which, Dr. Simms argues, was a covenant appurtenant to the lease and shares effective to bind his assignees and the Corporation for the remaining 74-year term of his proprietary Lease (it expires in the year 2060). Despite Dr. Simms' energetic assertion that this was precisely the result intended by the parties 20 years ago in 1966, we hold as a matter of law that this self-serving contention is insufficient to raise an issue for trial and that the covenant was personal to him.

At the outset, and as Special Term properly noted in dismissing the second through fourth causes of action contained in Dr. Simms' third-party complaint for money damages, absent a prohibited form of racial, ethnic or religious discrimination concededly not involved here, the board of directors of this cooperative had the absolute right for any reason or no reason to withhold its approval of Dr. Rossi as a prospective purchaser *(Weisner v 791 Park Ave. Corp.,* 6 NY2d 426). Nor was this power diluted by a letter, dated March 24, 1980, from the managing agent of the property to the Corporation's shareholders. The two-paragraph text of that communication was as follows:

"In the past, substantial pressure has been brought upon Board Members to act hurriedly in approving apartment transfers. In order to clarify the procedures for transferring apartments, your Board passed a resolution providing that the Board Members would use their best efforts to act within two weeks after receipt of all relevant information. Two-thirds of the Board must approve any such transfer.

"While it does not mean that two weeks after receipt of information is always required, it may be and in the event of serious questions, where a formal meeting of the Board is required, an even longer period might elapse. It is the intent of the Board to act expeditiously, but the protection of the Corporation's interests must be primary."

This letter, which provided the basis for Dr. Simms' motion for renewal and reargument, was properly rejected by Special Term as a basis for revival of Dr. Simms' dismissed damage claims, the court correctly avoiding entanglement in the irrelevant side issue of whether the board negligently failed to

take action upon Dr. Rossi's application for approval, or whether, on the contrary, Dr. Rossi omitted to furnish complete information. This second letter, by its plain terms, was at best announcing a precatory standard of diligence for board action rather than creating an absolute duty of compelling a two-week decision, the breach of which would cast the Corporation in damages. The shareholders were clearly advised that "even a longer period might elapse" and in any event "protection of the Corporation's interests must be primary." In any event, the Corporation need not place entire reliance upon the *Weisner* doctrine that it could disapprove Dr. Rossi for no reason. The board could (and as a practical matter did) disapprove Dr. Rossi because he refused to acquiesce to a surcharge for professional use of the apartment. This was a lawful position, since the May 20, 1966 letter was simply a personal concession to Dr. Simms for the duration of his tenancy of apartment 1-A, and not a covenant burdening future transfer of the appurtenant Lease and shares.

In *Orange & Rockland Utils. v Philwold Estates* (52 NY2d 253, 262), the Court of Appeals reiterated the recognized test for distinguishing personal covenants from those which run with the land: "Whether a covenant restricting real property is personal or runs with the land depends on three factors: (1) whether the parties intended its burden to attach to the servient parcel and its benefit to run with the dominant estate, (2) whether the covenant touches and concerns the land, and (3) whether there is privity of estate". It is apparent that the May 20, 1966 letter agreement does not satisfy either the first or the second requirement. The following considerations severally and collectively lead ineluctably to this result:

(i) The May 20, 1966 letter is addressed to Dr. Simms himself, and there is no intention expressed that it " 'applies to and is binding upon the heirs, executors, administrators and assignees of the parties' ". *(Cf. Nicholson v 300 Broadway Realty Corp.,* 7 NY2d 240, 243.)

(ii) Even if such a provision had been inserted in the letter, it would have been ultra vires and beyond the power of the board to effect, in view of paragraph SIXTH of the Lease which provides that all proprietary leases must be in the same form as the Lease, and that no change, alteration or amendment thereof shall be binding unless approved by lessees owning at least two thirds of the Corporation's capital stock. No such approval has been obtained here.

(iii) The fact that Dr. Simms enjoyed his concession for 20 years cannot be deemed a waiver of the Corporation's right to seek a surcharge from any new tenant of apartment 1-A in view of paragraph THIRTEENTH of the Lease which expressly negates any such waiver.

(iv) The right of the board to seek a surcharge for the use of any apartment for a professional purpose is expressly provided for in paragraph FIFTH of the Lease.

(v) The obligation created between the grantor Corporation and the grantee-tenant, Dr. Simms, in the May 20, 1966 letter, concerns only the payment of money. Such an undertaking, by its very nature, "usually does not concern or touch the land." *(Neponsit Prop. Owners' Assn. v Emigrant Indus. Sav. Bank,* 278 NY 248, 256.)

Finally, Dr. Simms has failed to sustain his claim that the Corporation has breached any fiduciary obligation owed to him as a shareholder. We would simply note that omission by the Corporation to impose the surcharge under these circumstances would constitute a breach of the fiduciary duty owed by the Corporation to all other residential shareholders who must benefit from its imposition, and would be inconsistent with continuing collection of the surcharge from the other first-floor professional tenant.

Accordingly, the order of the Supreme Court, New York County (Elliott L. Wilk, J.), entered July 8, 1985, which, *inter alia,* granted third-party defendant's cross motion for summary judgment dismissing the third-party complaint only to the extent of dismissing the second, third and fourth causes of action therein, is modified, on the law, to the extent of dismissing the third-party complaint in its entirety, and otherwise affirmed, with costs to third-party defendant. Order of the same court, entered January 6, 1986, which denied third-party plaintiff's motion for leave to renew his cross motion for summary judgment against third-party defendant, is affirmed, without costs.

KUPFERMAN, J. P., SULLIVAN, ASCH and FEIN, JJ., concur.

Order, Supreme Court, New York County, entered on July 8, 1985, unanimously modified, on the law, to the extent of dismissing the third-party complaint in its entirety, and otherwise affirmed. Third-party defendant-respondent-appellant and plaintiff-respondent shall recover of defendant-appellant/third-party plaintiff-appellant-respondent one bill of $75 costs and disbursements of this appeal, and it is further ordered that

the order entered on or about January 6, 1986 is unanimously affirmed, without costs and without disbursements.