**In re 523 EAST FIFTH STREET HOUSING PRESERVATION DEVELOPMENT FUND CORP., Debtor.**

**Bankruptcy No. 86 B 11863.**

United States Bankruptcy Court, S.D. New York.

Nov. 6, 1987.

Robert L. Rattet, New York City, for debtor.

Peter L. Zimroth, Corp. Counsel, New York City, for The City of New York.

## DECISION AND ORDER

HOWARD C. BUSCHMAN, III,
Bankruptcy Judge.

The 523 East Fifth Street Housing Development Fund Corporation (the "Debtor" or "Debtor in Possession") by motion seeks an order pursuant to Section 363 of the Bankruptcy Code, 11 U.S.C. § 363 (1986) ("the Code") authorizing the sale of the real property known as 523 East Fifth Street (the "Property") and all fixtures, machinery and equipment used in connection with the premises to 159 Ludlow Street Realty, Inc. ("Ludlow"). The Debtor seeks judgment declaring that the property can be sold free and clear of all liens, encumbrances and covenants and specifically a covenant in the deed by which the City of New York (the "City") conveyed the property to the Debtor, which covenant requires the property to be used solely for low income housing.

The Debtor asserts that the covenant is extinguishable under provisions of the deed itself, under Section 363(f) of the Code, and by the Court's equity powers. The City denies that the covenant can be so extinguished.

I.

The Debtor is a not-for-profit organization incorporated pursuant to Section 402 of the Not-for-Profit Corporation Law, N.Y. Not-For-Profit Corp. Sec. 402 (McKinney 1970), and Article XI of the Private Housing Finance Law, N.Y. Private Hous. Fin. Art. XI (McKinney 1970). It was organized for the specific purpose of acquiring the Property and renovating the abandoned building located on the premises. In June 1978, the City sold the parcel of land and the building to the Debtor for the consideration of $500. The Deed requires the Property to be operated solely as a housing project for persons or families of low income and provides for reconveyance to the City if the premises should cease to be operated as covenanted. The deed further stipulates that the Property cannot be leased, sold or transferred, in whole or part, except with the prior written approval of the Commissioner of the Department of Housing Preservation and Development of the City of New York. (Deed ¶ 1(a)–(c).)

The Debtor apparently procured a rehabilitation loan in the amount of $142,600 (the "Mortgage") from Chemical Bank which was later assigned to the United States, through the Department of Housing and Urban Development ("HUD") pursuant to Section 312 of the Housing Act of 1964, 42 U.S.C. § 14526 (1964). (City's Memorandum of Law, p. 5). Throughout its eight year history, the Debtor was not successful at establishing itself as a financially viable cooperative effort. No stock in the corporation was ever issued except to Vernon Perkins, the President. (Debtor's Motion, p. 2.) Rent payments by the residents were sporadic and according to the Debtor, its president, on several occasions, advanced his personal funds, in the aggregate of $40,000, to the Corporation to ensure timely mortgage payments. Currently, the residents of the building do not have leases and have outstanding rent balances for the pre- and post-petition periods. (Debtor's Motion, p. 4).

The Debtor defaulted on the mortgage and HUD commenced foreclosure proceedings. A public auction scheduled for Octo-

ber 7, 1986 was stayed by the Debtor's filing of a Chapter 11 petition on September 30, 1986. Asserting that the Debtor could not be restructured in a manner reconciling the low income restriction with the need for increased occupancy charges to cure mortgage arreages and provide for the upkeep of the building, the Debtor and its attorneys decided to sell the Property. The Debtor solicited bids and accepted the offer of the highest bidder, Ludlow. The Debtor and Ludlow then executed a purchase agreement subject to the stipulation that the Debtor procure a general release and surrender of all leases from the tenants and that the Bankruptcy Court approve the sale. The Debtor subsequently executed stipulations with five of the seven tenants in which it agreed to purchase the rights of the Tenants for $87,500. (Debtor's Exhibit C.) Accordingly, the Debtor now moves this Court for: (1) an order authorizing the sale free and clear of all liens, encumbrances, mortgages, security interests, claims and covenants of any nature whatsoever; (2) an approval of the purchase agreement between Ludlow and the Debtor; and (3) an approval of the stipulations with the tenants in all respects.

## II.

The Debtor first asserts that the City has no interest in the property that could encumber the sale because, by its own terms, the covenant will fall upon payment of the mortgage. (Debtor's Memorandum of Law, pp. 8–10.) This argument is not tenable.

The termination provision in the deed states:

Subject to the approval of the Board of Estimate of the City of New York, said covenants shall expire and be of no force and effect from and after the twentieth anniversary of the recording of this deed, or the date upon which the Mortgage or any extension thereof shall cease to be in effect, whichever date is earlier.

1. Board of Estimate approval is relevant in determining the intent of the parties and is, there-

Although the Debtor propounds several arguments against construing the termination provision as conditioning termination on City's Board of Estimate approval, we need not even address that issue in connection with the Debtor's first assertion.[1]

The flaw in the Debtor's assertion is that the covenant will not be extinguished until the mortgage is paid. Since twenty years have not passed, the mortgage cannot be paid until the property is sold and the property cannot be sold free of the covenant unless such sale is permitted by law. Therefore, the Debtor's reliance on the clause adds nothing. The issue remains whether the sale free and clear of the covenant is permitted by law. It is that issue to which we now turn.

## III.

In asserting that the property can be sold free and clear of the covenant, the Debtor principally relies on § 363(f) of the Code. That section enables a trustee or debtor in possession to sell property of an estate free and clear of all liens and interests if:

(1) Applicable nonbankruptcy law permits sale of such property free and clear of such interest;

(2) such entity consents;

(3) such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;

(4) such interest is the subject of a bona fide dispute; or

(5) such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

Here, there is no consent and the interest of the City is not a lien. Other than the scope of powers accorded under applicable nonbankruptcy law, it is not claimed that the City's interest is in bona fide dispute. Consequently, the Debtor asserts that the

fore, discussed *infra* in IV.

covenant is extinguishable under applicable nonbankruptcy law and that the City could be compelled in a legal proceeding pursuant to §§ 1951 and 1955 of New York's Real Property Actions and Procedure Law ("RPAPL"), as incorporated by § 363(f)(5) or in an equitable proceeding to accept a money satisfaction of its interest. Such assertions are not tenable for reasons set forth below.

## IV.

In claiming that the property may be sold free and clear of the covenant under applicable nonbankruptcy law, three contentions are made: that the covenant may be extinguished under RPAPL §§ 1951 and 1955, and that the covenant is invalid under common law. These contentions are also without merit.

### A.

 New York's RPAPL §§ 1951–1955 govern enforceability of restrictive covenants. These statutes were enacted to subject special terminations and conditions subsequent to the doctrine of relative hardship (described more fully, *infra*) and the power of the court to extinguish such restrictions upon payment of damages. They also codify the rules of relative hardship as they apply to restrictions on the use of land created by covenant, promises or negative easement (Law Revision Commission Report, p. 1714).

The Deed provides in paragraph 1(a) that "the premises shall be operated solely as a housing project for persons of families of low income." RPAPL § 1955(1) provides that

Where land is held, whether or not in trust, for benevolent, charitable, education, public or religious purposes and the use of such land is restricted to such purposes or to a particular application of or means of carrying out such purpose by a special limitation or condition subsequent created in the conveyance or devise under which the land is so held, or by an agreement to convey, reconvey or surrender the land or the estate so held upon a contingency relating to its use, an

action may be brought in the supreme court to obtain relief from such restriction as provided in this section.

The subject covenant would fall within the scope of interests covered by § 1955(1) were it not for § 1955(5). This latter subsection provides that:

This section shall apply to a special limitation or condition subsequent created or agreement made either before or after September 1, 1958, except that it shall not apply (a) where a right of entry or right to a conveyance, reconveyance or surrender of the property has accrued or a reverter has occurred prior to that date, or (b) where the conveyance creating the restriction was made by or the agreement creating the restriction was made with the United States, the state of New York or any governmental unit, subdivision or agency of the United States or the state of New York.

Because the covenant contained in the Deed was created for a public purpose with a governmental unit, subdivision and agency of New York State, it is not voidable under § 1955.

### B.

RPAPL § 1951 and § 1955 were enacted simultaneously, supporting the theory that the sections are to be read together. It would follow that applicability of a specific provision (§ 1955) renders another, general provision (§ 1951) inapplicable. Section 1951 permits extinguishment of a restriction on the use of land if

... at the time the enforceability of the restriction is brought in question, it appears that the restriction is of no actual and substantial benefit to the persons seeking its enforcement or seeking a declaration or determination of its enforceability, either because the purpose of the restriction has already been accomplished or, by reason of changed conditions or other cause, its purpose is not capable of accomplishment, or for any other reason.

RPAPL § 1951. In *Town of Islip v. Powell,* 78 Misc.2d 1007, 358 N.Y.S.2d 985 (Sup. Ct.1974) it was held that § 1955(5) applies

to § 1951. The Law Commission Reports do not suggest that applicability of § 1955 precludes relief under § 1951. Nor do they suggest to the contrary. Although the wording of § 1955(5) would appear to limit its applicability to § 1955 and not include § 1951, to so hold would permit use of § 1951 to negate the express condition of § 1955(5) notwithstanding the legislative intention to preserve restrictions in favor of public entities. Furthermore, it is in § 1955 that the legislature specifically addressed restrictions on land to use for a public purpose. It thus appears that the New York Appellate courts would follow *Town of Islip*. We thus hold that relief from a covenant in favor of the City of New York may not be ordered under § 1951.

### C.

■ In addition, it appears that even were it possible to order such relief under § 1951, that relief would not be granted in a case such as this. The party claiming unenforceability of the restriction under this provision bears the burden of proving unenforceability. *Nash v. State of New York*, 61 A.D.2d 852, 855, 401 N.Y.S.2d 923, 924 (1978).[2] Simply put, the party seeking extinguishment under § 1951 must prove (1) lack of benefit derived from enforcement of the restriction, and (2) legally cognizable reason for extinguishment within the meaning of § 1951. Neither has been shown here.

■ The application of these elements is shown by two principal New York cases, *Orange and Rockland Utilities, Inc. v. Philwold Estates*, 52 N.Y.2d 253, 437 N.Y. S.2d 291, 418 N.E.2d 1310 (1981) and *Board of Education East Irondequoit Central School District v. John Doe*, 88 A.D.2d 108, 452 N.Y.S.2d 964 (4th Dept.1982). In *Orange*, land was restricted to use for development and utilization of hydroelectric energy. The owners brought suit under,

*inter alia*, § 1951, alleging that condemnation by the City of New York of all its riparian rights in the water source rendered that land totally useless to it in light of the restriction. The defendant-grantor had retained, however, hunting and fishing rights over part of the encumbered land, which rights, defendant claimed, were enhanced by enforcement of the restriction in keeping the land unspoiled by other unprescribed use.

The *Orange* court held that the covenant was extinguishable under § 1951. As to the first element of § 1951, the court stated that in order to extinguish the restriction, it need not find the restriction of no benefit or value whatever to the party seeking to enforce it. Rather, because the legislature intended codification of the doctrine of relative hardship, the test involves a balancing of equities. Thus, restrictions would be extinguished if, in weighing the burdens of enforcement on the party seeking extinguishment against the benefit to the party seeking enforcement, it can be said that the restriction is of no actual and substantial benefit. *Id.* 437 N.Y.S.2d at 297, 418 N.E.2d at 1315–16. As to the second element of § 1951, the *Orange* court found that condemnation and resulting impossibility of building a hydroelectric plant constituted changed conditions or rendered the purposes not capable of being accomplished. *Id.* at 296, 297, 418 N.E.2d at 1314–15, 1315–16.

*Irondequoit* involved a school located in part on land encumbered by the residential use restriction. Enrollment in the school declined and the school closed its doors whereupon the school district sought to sell the land free of the restriction.

In balancing the equities, the *Irondequoit* court focused on the issue of feasibility of complying with the restriction. The threshold issue, under *Irondequoit*, is whether "the property is capable of being put to the use required by the restrictions."

---

**2.** Under § 363(*o*), the party asserting an interest in property bears the burden of proof "on the issue of the validity, priority, or extent of such interest." Here there is no dispute regarding the existence of the covenant and its current validity. Thus the City's burden of proof is

satisfied and the burden shifts to the debtor under state law to establish, by a preponderance of the evidence, that the covenant would not be enforced under state law and is therefore avoidable.

*Id.* at 115. The plaintiff established that the cost of demolishing existing structures and constructing residential homes would be so high as to render such homes unmarketable. The single adjacent property owner objecting (out of over 16 owners of adjacent properties and mortgagees named as defendants) failed to persuade the court of any equities in his favor other than "concern over possibility of noise, rats and broken bottles" and "for the safety of neighborhood children with increased traffic" which might accompany nonresidential use of the property. Thus the court found that the equities tipped in the plaintiff's favor and concluded that there was no actual or substantial benefit to be derived from enforcement of the restriction. Changed demographics, decline in enrollment, closing of the school and commercialization of the surrounding area constituted the reason for extinguishment required under § 1951.

Although the New York Court of Appeals has not expressly adopted *Irondequoit*'s emphasis on feasibility of enforcing the restriction, there is nothing in *Orange*, the last word of the Court of Appeals, on the matter, that such an approach is erroneous. The financial burden concomitant with compliance with a restriction is clearly one factor to consider in balancing the equities. Moreover, the language of the statute supports consideration of this factor in making incapability of accomplishing the purpose of the restriction a basis for extinguishing it.

In attempting to satisfy the first prong of the test, the Debtor herein seizes upon the *Irondequoit* court's focus on feasibility. It argues it can not operate the housing facility without incurring yearly deficit. This equity favoring the Debtor is, however, to be balanced against value of the restriction to the City. Although the Debtor's contribution to the City's low income housing objective may appear negligible in relation to the enormity of the low income housing problem in this city it is nevertheless part of the constellation of low income housing facilities spawned by Article XI of the Public Housing Finance Law and there is "actual and substantial benefit to the City." *Orange and Rockland Utilities, Inc. v. Philwold Estates*, 52 N.Y.2d 253, 437 N.Y.S.2d 291, 418 N.E.2d 1310 (1981). Thus, under the first prong of the *Orange* test, the covenant is not to be avoided.

Nor can it be said that the Debtor makes any allegations satisfying the second prong of the test. No legally cognizable reason for extinguishment has been established. Rather than arguing that the purpose of the restriction has been accomplished, the Debtor asserts that the infeasibility of carrying out the restriction and the financial debacle that has befallen it constitute "changed conditions" justifying extinguishment. This argument is not tenable. At the time of imposition of the subject restriction, it was contemplated or foreseeable that the restriction might be financially burdensome to the Debtor. Such burden was one which the Debtor agreed to bear as the *quid pro quo* for the City's receiving the nominal consideration for the property. To hold otherwise would permit a party relief under § 1951 because of a financial burden of which that party might have been fully aware and had fully assumed at time of conveyance. Therefore, infeasibility of compliance with the restriction and financial downturn, without more, cannot constitute changed conditions within the purview of § 1951.

Nor can it be said that the restriction is incapable of being accomplished. *Irondequoit* and *Orange* pre-suppose that such incapability derives from subsequent events or circumstances independent of the Debtor's own conduct. In *Irondequoit*, incapability of accomplishing the purpose of the restriction resulted from decline in enrollment in the school and subsequent closing of the school. In *Orange*, the externality was the City's condemnation of the plaintiff's riparian rights. In the case at bar, there is no analogous subsequent external factor. Rather, the alleged incapability of accomplishing the purpose of the restriction resulted from the Debtor's failure to discover, prior to entering the program, that rents from low income tenants were insufficient. It is inconceivable that

**574**

the legislature intended to provide coventors relief under § 1951 for the sole reason that such coventors mistakenly agreed to the covenant. Indeed, in these circumstances, to allow relief would facilitate a fraud on the City and confer a windfall on the Debtor.

### D.

■ The Debtor also argues that the covenant can be extinguished under common law, alleging it is an affirmative covenant which will not run with the land and be enforceable against its assignees. The City argues that it is a restrictive covenant which runs with the land.

At common law, covenants were either personal, *i.e.* enforceable only by the original covenantee against the original convenantors, or real covenants running with the land. Powell and Rohan, *Powell on Real Property* ¶ 670 (1979). The covenantee's benefits and covenantor's burdens would devolve upon their respective successive assignees if: (1) there is privity of estate; (2) the original covenanting parties intended the covenant to run; and (3) the covenant touches and concerns the land. Powell, ¶¶ 673–675; *Orange*, 52 N.Y.2d at 258, 437 N.Y.S.2d at 294, 418 N.E.2d at 1322. All three conditions are met here.

Since the deed runs from the City to the Debtor, there is clearly privity of estate. *E.g., Orange*, 52 N.Y.2d at 263, 437 N.Y.S.2d at 295, 418 N.E.2d at 1314; *Neponsit Prop. Owners' Assn v. Emigrant Ind. Sav. Bank*, 278 N.Y. 248, 261, 15 N.E.2d 793 (1938).

In order for the burden of the low income housing restriction to run, the parties must intend that the successor to the covenantor be obliged to perform the covenant. The requisite intent is usually found in language such as "these covenants shall run with the land," or "the grantee promises for himself, his heirs and assigns." If the instrument is unclear, the court will look at the purpose of the covenant and all the circumstances to ascertain the parties' probable intent. A.J. Casner, Ed. *American Law of Property* 365, 366 (1952); *Re-statement of Property* § 531 Comment C (1944); Powell, ¶ 673.

In arguing that the covenant was not intended to run with the land, the Debtor asserts that the termination clause suggests that only the twenty year expiration is subject to Board of Estimate approval and therefore the covenant is personal. It further asserts that the Board of Estimate should be empowered to prevent the Debtor from reaping a windfall only if the low interest loan subsidized by taxpayers is in effect. If the building is refinanced at market rates, the Debtor argues, it could not be expected to comply with the low income housing restriction.

The Debtor's arguments fail for several reasons. The deed specifically calls for reconveyance in the event the property ceased to be used for low-income housing from which we can infer that upon reconveyance, the City could continue to use the property for low-income housing. In addition, a provision in the deed subjecting lease or conveyance by the Debtor to the approval of the Commissioner of Department of Housing Preservation and Development of the City of New York suggests that the parties comtemplated that the City has a continuing right to see the property used in a manner consistent with its objectives. We thus conclude that the parties intended that the covenant run with the land. Supporting this conclusion is the totality of circumstances in this case, particularly the nominal consideration paid by the Debtor and incorporation of the Debtor for not-for-profit purposes.

Finally, for the covenant to "touch and concern" the land which it burdens, it must be found that the covenant "in purpose and effect substantially alters legal rights which flow from ownership of land," thereby "directly affect[ing] the use to which land may be put and substantially affect[ing] its value." *Neponsit*, 278 N.Y. at 258, 15 N.E.2d at 796; *Orange*, 52 N.Y.2d at 2631, 437 N.Y.S.2d at 295, 418 N.E.2d at 13141. Powell, ¶ 675. The Debtor argues that this element is not satisfied because (1) it is an affirmative covenant, *i.e.* requiring the covenantor to perform some act,

and (2) the City's interest or benefit is in gross, *i.e.* not appurtenant to any land retained and thus benefitted by the City.

First, we conclude that the covenant is a restrictive or negative covenant restraining the Debtor from using the property for other than low income housing purposes. The covenant is unlike covenants to supply water, to pay money, to build fences along boundary lines, to maintain party walls, and to repair existing structures which are recognized affirmative covenants. *Eagle Enterprises v. Gross*, 39 N.Y. 505, 384 N.Y.S.2d 717, 349 N.E.2d 816 (1976); *Neponsit*, 278 N.Y. 248, 15 N.E.2d 793; *Moxley v. New Jersey & N.Y. R.R. Co.*, 143 N.Y. 649, 37 N.E. 824 (1894); *Dey v. Prentice*, 90 Hun 27 (1895); *Mott v. Oppenheimer*, 135 N.Y. 312, 31 N.E. 1097 (1892); *Morehouse v. Woodruff*, 218 N.Y. 494, 113 N.E. 512 (1916); *Greenfarb v. R.S.K. Realty Corp.*, 256 N.Y. 130, 175 N.E. 649 (1931). Rather, it is a land use restriction in the grain of *Orange*'s covenant to use the land for hydroelectric energy purposes. The real nature of the covenant belies its language. Had the Debtor failed to maintain the property as low income housing and boarded up the building, it is doubtful that the Debtor could have been deemed in noncompliance with the covenant.

Moreover, were the covenant affirmative, it would be enforced in New York. New York once embraced the English Rule barring running of affirmative covenants. *Miller v. Clary*, 210 N.Y. 127, 103 N.E. 1114 (N.Y.1913). Today, New York courts disclaim abandonment of its position under *Miller*, but do recognize exceptions to the English Rule. *Nicholson v. 300 Broadway Realty Corp.*, 6 N.Y.2d 818, 164 N.E.2d 832 (1959). It is simply no longer the rule in New York that affirmative covenants do not run with the land. Instead, the courts look at "the intent and substantial effect of the covenant, rather than its form." *See Neponsit*, 278 N.Y. at 259, 15 N.E.2d at

796. Since nomenclature is irrelevant and the covenant alters the legal rights of the Debtor in its use of the land, the covenant may touch and concern the land, notwithstanding that it may be an affirmative covenant.

We also find the Debtor's second argument devoid of merit and therefore conclude that the covenant does touch and concern the land. In the United States, there are two principal jurisdictional views on whether a burden will run with the land when the benefit does not touch and concern the covenantee's land, *i.e.* the benefit is in gross. About half the States allow the burden to run. Powell, ¶ 675. The balance of the States and the *Restatement of Property*, § 537 (1944), adhere to the view that the burden will not run if the benefit is in gross. The theory underlying this view is that real covenants are intended to enhance the value of land and where no land benefits from the covenant the burden should not be sustained. New York's flexible, non-technical approach under *Neponsit* and its progeny compel a finding that the covenant does touch and concern. The Restatement approach was not adopted by the *Neponsit* court which focused on the alteration of legal rights flowing from ownership of land and on equitable principles. Since the Debtor's legal rights flowing from the ownership of the property are substantially curtailed as a result of the covenant, and equitable considerations weigh in favor of the City, the covenant touches and concerns the land.

## V.

Finally, citing *In re Willingboro Country Club*, 69 B.R. 414 (Bankr.D.N.J. 1987), the Debtor asserts that this Court may authorize sale of the property free of the covenant on equitable principles.[3] We do not so read *Willingboro*, but consider the Debtor's request for relief on equitable principles.

3. The Debtor also cites *Willingboro* for the proposition that the restrictive covenant is an "executory contract" which it may reject. The term "executory contract" is not defined in the Code. Legislative history behind § 365 of the Code indicates that no precise definition of "executory contract" was adopted, but that the provision generally includes contracts on which per-

formance remains due to some extent on both sides. H.R.Rep. No. 595, 95th Cong., 1st Sess. 347 (1947), reprinted in 1978 U.S. CODE CONG. & Ad. NEWS 5787, 6303; S.Rep. No. 989, 95th Cong., 2nd Sess. 58 (1978), reprinted in 1978 U.S. CODE CONG. & AD. NEWS 5787, 5844. As Professor Vern Countryman has written: "An executory contract is a contract under which the

In *Willingboro*, the Debtor acquired property by a deed containing a covenant restricting use of the conveyed land to use as a golf course. The deed conveying the subject property stated that the covenant was intended to protect purchasers of adjacent residential properties. The purchasers' deeds did not, however, contain the restrictive covenants. Evidence was presented establishing that enforcement would have diminished the value of the encumbered property, but removal of restrictions would diminish the value of adjacent residential properties. The court held that the restrictive covenant was unenforceable by a grantor who no longer held any property interest and by homeowners of adjacent lands whose deeds made no mention of the restriction. Another basis for finding the covenant unenforceable was that it was abandoned under New Jersey law by acquiescence in its violation.

The Debtor mischaracterizes *Willingboro* as based on equities. There, the court applied New Jersey common law pertaining to covenants running with the land. In that case, applicable nonbankruptcy law supported invalidation of the restrictive covenant. As noted above, New York's RPAPL and New York common law does not support a like result in the instant case.

Even if *Willingboro* were decided on equitable grounds, the facts in the case at bar are sufficiently distinguishable to warrant a different result. The City has not abandoned its objective in seeing the low income housing shortage problem alleviated via the Debtor's property. No acquiescence in violation has been established. In addition, the nominal consideration paid to acquire the property is a significant factor. These facts simply do not establish a basis upon which relief can be granted on equitable grounds. Indeed, equity would demand a result favoring the City.

Furthermore, the equitable ground set forth in § 363(f)(5) does not apply here. That section permits sale free and clear of an interest if the holder of the interest could be compelled to except a money satisfaction of such interest. Here, however, even were the covenant voidable under § 1951 or § 1955 and since those sections are to be read together, § 1955(4)(e) enables the Court to include, in addition to damages,

> such other provisions as will in the opinion of the court further the benevolent, charitable, educational, public or religious purposes for which the land is held and such other provisions as equity may require.

## VI.

For the foregoing reasons, motion to sell the property free and clear of the covenant under § 363(f) must be and hereby is denied.[4]

It is SO ORDERED.

---

obligation of both the bankrupt and the other party to the contract are so far unperformed that the failure of either to complete performance would constitute a material breach excusing the performance of the other." 57 Minn.L. Rev. 439 (1973). The subject covenant cannot be deemed an executory contract, because no performance whatsoever is due by the City.

**4.** Given that the branch of the motion seeking approval of the Debtor's arrangements with its tenants contemplates that this Court would approve of sale of the property free and clear of the covenant, that branch is apparently moot and must also be denied.