Gabrielli, J.
 

 In 1951, Orchard Hill Realties, Inc., a subdivider and developer, conveyed certain property in the subdivision of Orchard Hill in Orange County to William and Pauline Baum. The deed to the Baums contained the following provision:
 

 "The party of the first part shall supply to the party of the second part, seasonably, from May 1st to October 1st, of each year, water for domestic use only, from the well located on other property of the party of the first part, and the party of the second part agrees to take said water and to pay the party
 
 *507
 
 of the first part, a fee of Thirty-five ($35.00) dollars per year, for said water so supplied.”
 

 In addition, the deed also contained the following:
 

 "It is expressly provided that the covenants herein contained shall run with the land * * * and shall bind and shall enure to the benefit of the heirs, distributees, successors, legal representatives and assigns of the respective parties hereto”.
 

 Appellant is the successor in interest of Orchard Hill Real-ties, Inc., and respondent, after a series of intervening conveyances, is the successor in interest of the Baums. The deed conveying title to respondent does not contain the afore-mentioned covenant to purchase water and, in fact, none of the deeds following the original deed to the Baums contained the mutual promises regarding water supply. While some of the deeds in the chain of title from Baum contained a provision that they were made subject to the restrictions in the deed from Orchard Hill Realties to Baum, the deed to respondents contained no such covenants, restrictions or "subject to” clause.
 

 According to the stipulated facts, respondent has refused to accept and pay for water offered by appellant since he has constructed his own well to service what is now a year-round dwelling. Appellant, therefore, instituted this action to collect the fee specified in the covenant (contained only in the original deed to Baum) for the supply of water which, appellant contends, respondent is bound to accept. The action was styled as one "for goods sold and delivered” even though respondent did not utilize any of appellant’s water. Two of the lower courts found that the covenant "ran” with the land and, hence, was binding upon respondent as successor to the Baums, but the Appellate Division reversed and held that the covenant could not be enforced against respondent. We must now decide whether the promise of the original grantees to accept and make payment for a seasonal water supply from the well of their grantor is enforceable against subsequent grantees and may be said to "run with the land.” We agree with the determination of the Appellate Division and affirm its order.
 

 Regardless of the express recital in a deed that a covenant will run with the land, a promise to do an affirmative act contained in a deed is generally not binding upon subsequent grantees of the promisor unless certain well-defined and long-established legal requisities are satisfied
 
 (Nicholson v 300
 
 
 *508
 

 Broadway Realty Corp.,
 
 7 NY2d 240, 244;
 
 Neponsit Prop. Owners’ Assn. v Emigrant Ind. Sav. Bank,
 
 278 NY 248, 254-255; see, also,
 
 Morgan Lake Co. v New York, New Haven & Hartford R. R. Co.,
 
 262 NY 234, 239;
 
 Miller v Clary,
 
 210 NY 127;
 
 Mygatt v Coe,
 
 147 NY 456; 13 NY Jur, Covenants and Restrictions, § 12, pp 252-253). In the landmark
 
 Neponsit
 
 case
 
 (supra),
 
 we adopted and clarified the following test, originating in the early English decisions, for the enforceability of affirmative covenants (cf. Spencer’s Case, 77 Eng Rep 72 [1583]), and reaffirmed the requirements that in order for a covenant to run with the land, it must be shown that:
 

 (1) The original grantee and grantor must have intended that the covenant run with the land.
 

 (2) There must exist "privity of estate” between the party claiming the benefit of the covenant and the right to enforce it and the party upon whom the burden of the covenant is to be imposed.
 

 (3) The covenant must be deemed to "touch and concern” the land with which it runs. (See, also,
 
 Nicholson v 300 Broadway Realty Corp., supra;
 
 Restatement Property, §§ 531, 534, 537, 538; 13 NY Jur, Covenants and Restrictions, § 8, p 248.)
 

 Even though the parties to the original deed expressly state in the instrument that the covenant will run with the land, such a recital is insufficient to render the covenant enforceable against subsequent grantees if the other requirements for the running of an affirmative covenant are not met. The rule is settled that "[r]egardless of the intention of the parties, a covenant will run with the land and will be enforceable against a subsequent purchaser of the land at the suit of one who claims the benefit of the covenant, only if the covenant complies with certain legal requirements”
 
 (Neponsit, supra,
 
 p 254; see, also,
 
 Morgan Lake Co. v New York, New Haven & Hartford R. R. Co., supra,
 
 p 238). Thus, although the intention of the original parties here is clear and privity of estate exists, the covenant must still satisfy the requirement that it "touch and concern” the land.
 

 It is this third prong of the tripartite rule which presents the obstacle to appellant’s position and which was the focus of our decisions in
 
 Neponsit
 
 and
 
 Nicholson v 300 Broadway Realty Corp.
 
 (7 NY2d 240, 244,
 
 supra). Neponsit
 
 first sought to breathe substance and meaning into the ritualistic rubric that an affirmative covenant must "touch and concern” the land in order to be enforceable against subsequent grantees. Observ
 
 *509
 
 ing that it would be difficult to devise a rule which would operate mechanically to resolve all situations which might arise, Judge Lehman observed that "the distinction between covenants which run with land and covenants which are personal, must depend upon the effect of the covenant on the legal rights which otherwise would flow from the ownership of land and which are connected with the land” (Neponsit,
 
 supra,
 
 p 258). Thus, he posed as the key question whether "the covenant in purpose and effect substantially alter[s] these rights” (p 258). In
 
 Nicholson,
 
 this court reaffirmed the soundness of the reasoning in
 
 Neponsit
 
 as "a more realistic and pragmatic approach”
 
 (supra,
 
 p 245).
 

 The covenants in issue in
 
 Neponsit
 
 required the owners of property in a development to pay an annual charge for the maintenance of roads, paths, parks, beaches, sewers and other public improvements. The court concluded that the covenant substantially affected the promisor’s legal interest in his property since the latter received an easement in common and a right of enjoyment in the public improvements for which contribution was received by all the landowners in the subdivision
 
 (supra,
 
 pp 259-260).
 

 A close examination of the covenant in the case before us leads to the conclusion that it does not substantially affect the ownership interest of landowners in the Orchard Hill subdivision. The covenant provides for the supplying of water for only six months of the year; no claim has been advanced by appellant that the lands in the subdivision would be waterless without the water it supplies. Indeed, the facts here point to the converse conclusion since respondent has obtained his own source of water. The record, based on and consisting of an agreed stipulation of facts, does not demonstrate that other property owners in the subdivision would be deprived of water from appellant or that the price of water would become prohibitive for other property owners if respondent terminated appellant’s service. Thus, the agreement for the seasonal supply of water does not seem to us to relate in any significant degree to the ownership rights of respondent and the other property owners in the subdivision of Orchard Hill. The landowners in
 
 Neponsit
 
 received an easement in common to utilize public areas in the subdivision; this interest was in the nature of a property right attached to their respective properties. The obligation to receive water from appellant resembles a personal, contractual promise to purchase water
 
 *510
 
 rather than a significant interest attaching to respondent’s property. It should be emphasized that the question whether a covenant is so closely related to the use of the land that it should be deemed to "run” with the land is one of degree, dependent on the particular circumstances of a case
 
 (Neponsit, supra,
 
 p 258). Here, the meager record before us is lacking and woefully insufficient to establish that the covenant "touches and concerns” the land, as we have interpreted that requirement.
 

 There is an additional reason why we are reluctant to enforce this covenant for the seasonal supply of water. The affirmative covenant is disfavored in the law because of the fear that this type of obligation imposes an "undue restriction on alienation or an onerous burden in perpetuity”
 
 (Nicholson v 300 Broadway Realty Corp.,
 
 7 NY2d 240, 246,
 
 supra).
 
 In
 
 Nicholson,
 
 the covenant to supply heat was not interdicted by this concern because it was conditioned upon the continued existence of the buildings on both the promisor’s and the promisee’s properties. Similarly, in
 
 Neponsit,
 
 the original 1917 deed containing the covenant to pay an annual charge for the maintenance of public areas expressly provided for its own lapse in 1940. Here, no outside limitation has been placed on the obligation to purchase water from appellant. Thus, the covenant falls prey to the criticism that it creates a burden in perpetuity, and purports to bind all future owners, regardless of the use to which the land is put. Such a result militates strongly against its enforcement. On this ground also, we are of the opinion that the covenant should not be enforced as an exception to the general rule prohibiting the "running” of affirmative covenants.
 

 Accordingly, the order of the Appellate Division should be affirmed, with costs.
 

 Chief Judge Breitel and Judges Jasen, Jones, Wachtler, Fuchsberg and Cooke concur.
 

 Order affirmed.