[865 NE2d 1228, 834 NYS2d 62]

328 Owners Corp., Appellant, v 330 West 86 Oaks Corp. et al., Respondents, and City of New York, Appellant.

Argued February 13, 2007; decided April 3, 2007

## POINTS OF COUNSEL

*Herrick, Feinstein LLP,* New York City (*Scott E. Mollen, Patricia M. Graham* and *John P. Sheridan* of counsel), for 328 Owners Corp., appellant. I. Plaintiff, as an adjoining property owner, has standing to prosecute this action. (*Society of Plastics Indus. v County of Suffolk,* 77 NY2d 761; *Matter of Lee v New York City Dept. of Hous. Preserv. & Dev.,* 212 AD2d 453; *Matter of Sun-Brite Car Wash v Board of Zoning & Appeals of Town of N. Hempstead,* 69 NY2d 406; *Nature Conservancy v Congel,* 253 AD2d 248.) II. The Appellate Division erred in failing to uphold the deed's restrictions on the use of the property. (*Post v Weil,* 115 NY 361; *Suffolk Bus. Ctr. v Applied Digital Data Sys.,* 78 NY2d 383; *Munro v Syracuse, Lake Shore & N. R.R. Co.,* 200 NY 224; *McGrane v Wiener,* 268 App Div 789; *Jennings Beach Assn. v Kaiser,* 145 AD2d 607; *Booth v Knipe,* 225 NY 390; *Matter of Board of Commrs. of Washington Park of City of Albany,* 52 NY 131; *Johnson v Shelter Is. Grove & Camp Meeting Assn.,* 122 NY 330; *Hoppough v Struble,* 60 NY 430; *New York &*

*Brooklyn Suburban Inv. Co. of N.Y. v Leeds,* 100 Misc 2d 1079.) III. The court below erred in failing to hold that the statutory and project summary use restrictions applied to the developer. (*Arroyo v Rosenbluth,* 115 Misc 2d 655; *Rubel Bros., Inc. v Dumont Coal & Ice Co., Inc.,* 200 App Div 135; *Hodge v Sloan,* 107 NY 244; *Neponsit Prop. Owners' Assn. v Emigrant Indus. Sav. Bank,* 278 NY 248; *City of New York v Delafield 246 Corp.,* 236 AD2d 11; *Matter of Sun-Brite Car Wash v Board of Zoning & Appeals of Town of N. Hempstead,* 69 NY2d 406.)

*Michael A. Cardozo, Corporation Counsel,* New York City (*Tahirih M. Sadrieh, Edward F.X. Hart* and *Warren Shaw* of counsel), for City of New York, appellant. I. The deed limits the use of the subject property to conservation. (*Jennings Beach Assn. v Kaiser,* 145 AD2d 607; *Rydberg v Jennings Beach Assn.,* 69 AD2d 816; *Malley v Hanna,* 65 NY2d 289; *Booth v Knipe,* 225 NY 390; *McGrane v Wiener,* 268 App Div 789; *Suffolk Bus. Ctr. v Applied Digital Data Sys.,* 78 NY2d 383; *Medical Coll. Lab. v New York Univ.,* 178 NY 153; *Phoenix Ins. Co. v Continental Ins. Co.,* 87 NY 400; *Bannin v Peck,* 266 App Div 209, 291 NY 717; *Trump Vil. Section 3 v New York State Hous. Fin. Agency,* 292 AD2d 156, 98 NY2d 671.) II. If the deed is interpreted as not requiring compliance with the project, then it is invalid. (*Lipton v Bruce,* 1 NY2d 631; *Morrison v Piper,* 77 NY2d 165; *Granada Bldgs. v City of Kingston,* 58 NY2d 705; *Henry Modell & Co. v City of New York,* 159 AD2d 354; *D'Angelo v Cole,* 67 NY2d 65; *Matter of Signacon Controls v Mulroy,* 32 NY2d 410; *Matter of Ross v Wilson,* 308 NY 605; *Cameron Estates, Inc. v Deering,* 308 NY 24; *Town of Brookhaven v Aronauer,* 65 AD2d 570; *Gladsky v City of Glen Cove,* 164 AD2d 567.) III. The provisions of the Urban Development Action Area Act must be construed into the deed. (*Matter of Lade v Abbott,* 185 Misc 501.) IV. The restrictive covenant meets the requirements of a covenant running with the land. (*Neponsit Prop. Owners' Assn. v Emigrant Indus. Sav. Bank,* 278 NY 248; *Chambers v Old Stone Hill Rd. Assoc.,* 1 NY3d 424; *Malley v Hanna,* 65 NY2d 289; *Booth v Knipe,* 225 NY 390; *City of New York v Delafield 246 Corp.,* 236 AD2d 11.) V. The covenant is effective against the new owner as a party taking with notice. (*Witter v Taggart,* 78 NY2d 234; *Buffalo Academy of Sacred Heart v Boehm Bros.,* 267 NY 242; *Hodge v Sloan,* 107 NY 244; *Farrell v Sitaras,* 22 AD3d 518; *Webster v Ragona,* 7 AD3d 850; *487 Elmwood v Hassett,* 83 AD2d 409.)

*Edward B. Safran,* New York City, for 330 West 86th Street,

LLC, respondent. I. The Urban Development Action Area Act does not condition a conveyance on a permanent land use restriction; accordingly no such restriction should be read into a deed conveying property pursuant to the procedural requirements of the act where the deed contains no express restrictive covenant. (*D'Angelo v Cole,* 67 NY2d 65; *Sega v State of New York,* 60 NY2d 183; *Alweis v Evans,* 69 NY2d 199; *Margulis v Lindsay,* 31 NY2d 167.) II. The deed contains no restrictive covenant limiting the manner in which the property may be used; no such covenant may be implied, nor may the deed be reformed to include such a covenant. (*Jennings Beach Assn. v Kaiser,* 145 AD2d 607; *Post v Weil,* 115 NY 361; *67 Wall St. Co. v Franklin Natl. Bank,* 37 NY2d 245; *Adler v Simpson,* 203 AD2d 691; *Matter of Hamilton St.,* 144 App Div 702; *Grafton v Moir,* 130 NY 465; *Val-Kill Co., Inc. v Cities Serv. Oil. Co.,* 278 App Div 164; *West, Weir & Bartel v Mary Carter Paint Co.,* 25 NY2d 535; *Huggins v Castle Estates,* 36 NY2d 427; *Bear Mtn. Books v Woodbury Common Partners,* 232 AD2d 595, 90 NY2d 808.)

**OPINION OF THE COURT**

Ciparick, J.

The issue in this case is whether land use restrictions as set forth in article 16 of the General Municipal Law and referenced in the recitals of a deed to real property can be enforced against a successor grantee. We hold that under the circumstances presented here, they can.

The subject property, located at 330 West 86th Street in Manhattan, came into municipal ownership through an in rem tax foreclosure proceeding. The property consists of a five-story townhouse, constructed around 1900, which serves as an eight-unit multiple dwelling. The building, upon entering the City's inventory, had many municipal code violations and "was in deteriorated condition and in need of rehabilitation." The City, through the Asset Sales Program of the Department of Housing Preservation and Development (HPD),[1] determined that the status of the building "tended to impair or arrest the sound growth and development of the municipality" and that its

---

1. HPD's Asset Sales Program is part of its Division of Alternative Management Programs (DAMP). The Asset Sales Program is charged, in part, to help meet HPD's goal of "returning the City's housing stock to private tax-paying ownership, while maintaining it as affordable housing" (Rules of City of NY Dept of Hous Preserv and Dev [28 RCNY] § 21-22 [a]). Buildings that are marketable "as is" are placed in the Asset Sales Program while buildings that need city funding are placed in one of the other DAMP programs.

otherwise marketable condition rendered it ripe for disposition as an Urban Development Action Area Project (UDAAP) as governed by the Urban Development Action Area Act (UDAAA), article 16 of the General Municipal Law.

When HPD seeks to sell one of its properties under this program, it offers the occupant tenants the right of first refusal to purchase the property at an appraised value, as it did here. This is contingent on the tenants agreeing to remove all city code violations and hazardous conditions, and maintaining the existing tenants' rent at its current amount for two years. If the tenants are unwilling or unable to purchase the property, HPD places the property on the open market, generally selling the premises to the highest bidder.

The subject property was appraised at $340,000 based on the capitalization of its income. Thus, HPD sent letters to each of the building's tenants giving them an option, through June 30, 1998, to submit an offer to purchase the premises. The letters informed the tenants that negotiation of the sale was subject to various other conditions, including that the prospective purchasers could not have previously owned the building and that "[t]he sale of the Building is subject to approval by the City Council and the Mayor, and to all other applicable requirements of law."[2] On June 29, 1998, the tenants submitted a letter to HPD offering to purchase the premises, complete with supporting documentation indicating that they were able to meet HPD's additional requirements. By correspondence dated December 28, 1998, HPD notified the tenants that it was prepared to enter into negotiations. The tenants then formed a corporation, 330 West 86 Oaks Corp. (Oaks Corp) for the purpose of taking title to the property.

In the interim, on January 26, 1999, HPD requested that the City Council make the necessary findings for conveyance of the property as an accelerated UDAAP pursuant to General Municipal Law § 695 (2) (b) and (6) (d). That same day, HPD also submitted a request for authorization of the disposition of the property from the Office of the Mayor. Attached to each request was a copy of the "Project Summary" that described the type of project as "Conservation."

Specifically, HPD asked that the City Council:

---

**2.** Additionally, HPD required that the tenants meet its asking price of $340,000, that the majority of the units be in support of submitting the offer and that rent collections from March 1998 through July 1998 average at least 50%.

"Find that the present status of the Disposition Area tends to impair or arrest the sound growth and development of the municipality and that the proposed [UDAAP] is consistent with the policy and purposes of Section 691 of the General Municipal Law; . . .

"Waive the area designation requirement of Section 693 of the General Municipal Law pursuant to Section 693 of the General Municipal Law; . . .

"Waive the requirements of Sections 197-c and 197-d of the Charter pursuant to Section 694 of the General Municipal Law; and . . .

"Approve the project as an [UDAAP] pursuant to Section 694 of the General Municipal Law."

In making these requests, HPD confirmed that "the Project . . . consists solely of the rehabilitation or conservation of existing private or multiple dwellings or the construction of one to four unit dwellings, and does not require any change in land use permitted under the New York City Zoning Resolution" (Council of City of NY Resolution No. 673 [Mar. 16, 1999]).

In order to approve a proposal, the City Council must find that the current status of the building "tends to impair or arrest the sound growth and development of the municipality," and that the proposed UDAAP is "consistent with the policy and purposes stated in section six hundred ninety-one"[3] (General Municipal Law § 694 [4] [a], [c]). Although generally, any City Council approval must be made "in conformance with the standards and procedures required for all land use determinations pursuant to general, special or local law or charter," the land use review procedures, as well as the area designation requirement (General Municipal Law § 693), can be waived "if the proposed urban development action area project consists solely

---

**3.** General Municipal Law § 691 sets forth the "policy and purposes" behind the UDAAA. In part, it states that because deteriorated buildings have an adverse impact on neighborhoods and the growth of municipalities:

"it is necessary to provide incentives for the correction of such substandard, insanitary, blighted, deteriorated or deteriorating conditions, factors, and characteristics by the clearance, replanning, reconstruction, redevelopment, rehabilitation, restoration or conservation of such areas, the undertaking of public and private improvement programs related thereto and the encouragement and participation in these programs by private enterprise."

of the rehabilitation or conservation of existing private or multiple dwellings or the construction of one to four unit dwellings without any change in land use permitted by local zoning" (General Municipal Law § 694 [5]). Here, HPD sought such waiver from the provisions of New York City Charter §§ 197-c and 197-d, which would have otherwise required compliance with the Uniform Land Use Review Procedure (ULURP) and additional City Council review.

After a public hearing in March 1999, the City Council made the requisite findings, approved HPD's requests and directed that the "Project shall be disposed of and developed upon the terms and conditions in the Project Summary that HPD has submitted to the Council." Shortly thereafter, the Mayor approved the designation of Oaks Corp as a qualified and eligible sponsor and authorized the conveyance of the subject premises to Oaks Corp based on the City Council Resolution. On June 22, 1999, the City sold the subject premises to Oaks Corp for $340,000.

The deed conveying the property includes several recitals, a granting and a habendum clause. Referenced in and made a part of the deed is a description of the disposition area, the City Council Resolution approving the UDAAP (including the Project Summary) and the Mayoral approval. The deed, in its entirety, contains numerous references in the recitals to the property's UDAAP designation, and to the parties' required compliance with the UDAAA's requirements. It states that the City Council has waived the General Municipal Law § 693 area designation as well as City Charter § 197-c's requirements under General Municipal Law § 694, and approved the project as an UDAAP. In addition, the deed recites:

> "WHEREAS, the project to be undertaken by Sponsor ('Project') consists solely of the rehabilitation or conservation of existing private or multiple dwellings or the construction of one to four unit dwellings without any change in land use permitted by existing zoning . . . ."

However, the language employed in the habendum clause of the deed is not as precise. It fails to explicitly reference the above use restriction on the property but rather states that the project sponsor accepts "the Disposition Area [the property conveyed] subject to . . . [t]he provisions of all laws, codes, statutes, ordinances, acts, rules and regulations of any local,

state or federal government . . . existing at the time of delivery of this deed." It additionally sets forth two affirmative obligations on the part of the sponsor: the duty to remedy all building violations of record within six months, and to maintain existing tenants' rents at a fixed rate for two years. The habendum clause also declares that:

> "The agreements and covenants set forth in this Deed shall run with the land and shall be binding to the fullest extent permitted by law and equity. Such covenants shall inure to the benefit of the City and shall bind and be enforceable against Sponsor and its successors and assigns."

Significantly, Oaks Corp never corrected the code violations. Rather, on February 13, 2001, it sold the premises to 330 West 86th Street, LLC (330 West) for $1 million.[4] This new owner allegedly plans to demolish the building and develop a high-rise "sliver" apartment building in its place. In anticipation of the sale to 330 West, plaintiff 328 Owners Corp.—the owners of an adjacent building which shares a party wall—filed a summons and complaint, naming Oaks Corp and the City as defendants, challenging the pending conveyance. It also filed a lis pendens against the property. The new owner, 330 West, purchased the property with notice of the pending lawsuit and the lis pendens. After the sale, plaintiff amended its complaint to name 330 West as an additional defendant. The first two causes of action sought a declaratory judgment that the deed restricts the use of the land and that the new owner and any successors or assigns must act within those constraints and also sought injunctive relief. A third cause of action sought to declare the City's conveyance to Oaks Corp null and void.

Supreme Court dismissed the third cause of action as barred by the statute of limitations. The City then asserted two cross claims. The first sought a declaration that under the deed and related statutory requirements, the subject premises could only be used for conservation purposes, or in the alternative, for the rehabilitation or conservation of existing private or multiple dwellings or construction of one to four unit multiple dwellings.

---

4. Plaintiff alleges that the sale price was at least $1 million based on the transfer tax for the property that was recorded on March 15, 2001. However, a recent New York Times article states that the residents sold the property to developers for $2.25 million in March 2001 (*see* Mindlin, *For a Brownstone Lot, Tall Dreams and Troubled Neighbors*, New York Times, Mar. 4, 2007). The sales contract was not made part of the record.

The second cross claim sought to permanently enjoin the owner and any successors from using the premises except in compliance with the above-referenced uses. 330 West also filed a counterclaim against plaintiff regarding its filing of a notice of pendency against the subject premises. The parties all moved for summary judgment.

Supreme Court dismissed all claims against Oaks Corp. The court denied 330 West's motion for summary judgment and partially granted the City and plaintiff's motions for summary judgment against 330 West, declaring that the subject property "may not be used other than for (a) rehabilitation or conservation of the existing building thereon, or (b) construction of one to four unit dwellings without any change in land use." All aggrieved parties appealed.

In the interim, the City sought leave to reargue alleging that Supreme Court overlooked the City's contention that the use of the property should be limited to conservation only. The City further asked that the order be resettled to reflect that the use restrictions should run with the land. 328 Owners Corp. joined in support of the motion. Supreme Court denied reargument but granted the resettlement application and declared that the use restrictions run with the land.

The Appellate Division, in a divided opinion, reversed and granted summary judgment to 330 West holding that there was no intent by the original parties to the deed that the covenant run with the land nor did it touch and concern the land. The dissenting justices voted to affirm Supreme Court, reasoning that the parties' intent, in light of the UDAAA, was clear, and that to read the deed otherwise would undermine the purpose of the UDAAA. The City and 328 Owners Corp. both appeal as of right pursuant to CPLR 5601 (a). Both appellants ask this Court to hold that the deed be read in conjunction with article 16 of the General Municipal Law and to enforce the land use restrictions as running with the land. The City also requests that we further limit the use of the property to conservation purposes. We now reverse and reinstate the amended order and judgment of Supreme Court.

Defendant, 330 West, in support of its claim that it is not subject to the land use restrictions of article 16 of the General Municipal Law, places great emphasis on the covenants restricting the property's use being located in the recital provisions of the deed rather than the habendum clause. While it is true that

the habendum clause is generally the best depiction of an interest conveyed, the inquiry is not that narrow (*see e.g. Phoenix Ins. Co. v Continental Ins. Co.*, 87 NY 400, 407 [1882] [placement of a restrictive covenant outside the habendum clause did not undermine its enforceability]; *Suffolk Bus. Ctr. v Applied Digital Data Sys.*, 78 NY2d 383, 388 [1991] [no particular words are determinative to give meaning to a condition of conveyance]; *Wasil v Realty Dealership Co.*, 87 AD2d 931, 932 [3d Dept 1982] [it may be necessary to examine the "interrelationship between the recital and operative clauses" to be sure that the "intent is evidenced from a reading of the whole instrument"]). Rather, "[e]very instrument creating [or] transferring . . . an estate or interest in real property must be construed according to the intent of the parties, so far as such intent can be gathered from the whole instrument, and is consistent with the rules of law" (Real Property Law § 240 [3]; *cf. Post v Weil*, 115 NY 361, 369-372 [1889]; *see also* 4 Warren's Weed, New York Real Property, Deeds § 37.02 [5th ed] ["Courts today de-emphasize the formal parts of a deed and hold, in the construction of deeds, that the language of a deed must be so interpreted and applied as to be meaningful and valid, and the intent of the parties, as evidenced by the deed and the circumstances surrounding the making thereof, must be given expression wherever it is possible to do so without violating law and reason"]).

Looking to the whole instrument, inclusive of the City Council and Mayoral approvals as well as the Project Summary, there are 28 references to the project being governed by its UDAAP status. The deed and City Council and Mayoral approvals all make reference to the sale of the property as an accelerated UDAAP—a designation permissible only when the property's use is restricted by the limitations set forth in General Municipal Law §§ 693 and 694 (5)—the very restriction that is spelled out in the recital provisions on the first page of the deed limiting the land's use to conservation, rehabilitation or construction of one to four unit multiple dwellings. These references are consistent with General Municipal Law § 695 (5)'s requirement that the deed "shall contain provisions insuring the use of such real property for purposes consistent with such [UDAAP]." The habendum clause further states:

> "The agreements and covenants set forth in this
> Deed shall run with the land and shall be binding to
> the fullest extent permitted by law and equity. Such

> covenants shall inure to the benefit of the City and
> shall bind and be enforceable against Sponsor and
> its successors and assigns."

This clause is not limited to covenants that are set forth in the
habendum clause but covers any such covenants discernible
from the deed in its entirety and further dictates that they shall
"run with the land" and "inure to the benefit of the City."

Although the deed is by no means a model of draftsmanship,
in this case the land use restrictions can be recognized by view-
ing the instrument as a whole. Furthermore, since the deed
"derives all its validity" from article 16 of the General Munici-
pal Law, its provisions must "be construed into and with the
deed" (*Matter of Lade v Abbott*, 185 Misc 501, 507 [Sup Ct, On-
ondaga County 1945]; *see also United States v City of New York*,
233 F2d 307, 310 [2d Cir 1956]). The City had no authority to
convey the property in this manner without imposing statutory
use restrictions.[5]

Our analysis, however, does not end here as, even when a
deed declares that a restrictive covenant will run with the land,
it must still comply with certain legal requisites to be enforce-
able against successors in interest (*see Neponsit Prop. Owners'
Assn. v Emigrant Indus. Sav. Bank*, 278 NY 248 [1938]; *cf. Wit-
ter v Taggart*, 78 NY2d 234, 237-238 [1991] ["the law has long
favored free and unencumbered use of real property, and cove-
nants restricting use are strictly construed against those seek-
ing to enforce them"]). In *Neponsit*, we articulated three condi-
tions that must be met in order for a covenant to run with the
land:

> "(1) it must appear that grantor and grantee
> intended that the covenant should run with the
> land; (2) it must appear that the covenant is one

---

**5.** This is consistent with the general policy statements of General Munic-
ipal Law § 691 as well as HPD's mission statement that:

> "Using a variety of preservation, development and enforcement
> strategies, HPD strives to improve the availability, affordability
> and quality of housing in New York City. As the nation's largest
> municipal housing agency, HPD works with private, public and
> community partners to strengthen neighborhoods and enable
> more New Yorkers to become homeowners or to rent well-
> maintained, affordable housing" (HPD Mission Statement,
> <http://www.nyc.gov/html/hpd/html/about/mission.shtml> [last
> accessed Mar. 21, 2007], cached at <http://www.courts.state.ny.
> us/reporter/webdocs/about_HPD_description_of_services_and
> _mission.htm>).

'touching' or 'concerning' the land with which it runs; (3) it must appear that there is 'privity of estate' between the promisee or party claiming the benefit of the covenant and the right to enforce it, and the promisor or party who rests under the burden of the covenant" (278 NY at 255 [citation omitted]).

These three conditions will be addressed in turn.

First, the parties' intent to restrict the use of the property is clear from the deed's multiple references to the UDAAP requirements and from the inclusion, within the habendum clause, of an explicit provision stating that "agreements and covenants . . . shall run with the land." This intent is equally apparent from the circumstances surrounding the transaction (*see Jennings Beach Assn. v Kaiser*, 145 AD2d 607, 608 [2d Dept 1988]). Here, the sponsor must have understood that the benefits it received—low appraisal value and exemption from both competitive bidding and a time-consuming land use review—were directly related to the City's intent to restrict the use of the land for the purposes of the completion of the project. The purchase price alone is indicative of the parties' intent. HPD appraised the property's value based on its current income in its current state. It did not calculate the potential income stream for a possible use of the land with a high-rise building, which HPD could have realized had it sold the building on the open market without restriction.

Furthermore, the benefits received by the sponsor/tenants came at a price (*cf. Medical Coll. Lab. v New York Univ.*, 178 NY 153, 163 [1904] ["defendant cannot retain what is beneficial in the transaction, while disclaiming what is onerous"]). Oaks Corp was able to purchase the premises without a cumbersome land use review and without competitive bidding. In exchange, it was required to remove code violations within six months, which it never did, offer two year leases without rent increases to the current tenants and comply with the accelerated UDAAP's land use restrictions. To allow Oaks Corp to circumvent the conditions by promptly selling the premises is clearly antithetical to the purpose of article 16 of the General Municipal Law (*cf. Granada Bldgs. v City of Kingston*, 58 NY2d 705, 708 [1982] ["Municipal contracts which violate express statutory provisions are invalid"]). Furthermore, to view the parties' intent otherwise disregards the language of the deed as a whole. It also permits the sponsor's subsequent sale to result in an uncontemplated windfall to the detriment of the municipality.

The second *Neponsit* condition, that the covenant touches and concerns the land, is likewise met here. Although the requirements of offering renewal leases and correcting code violations are finite in nature, they also are relevant to the economic development of the property as declared by the City Council under article 16 of the General Municipal Law. The durational restraint of General Municipal Law § 695—that the project be completed within a reasonable time—appears to be "merely a reflection of prudent business practices" and is not meant to restrain the ongoing duty to conserve, rehabilitate or reconstruct within the constraints of the deed and UDAAA (*City of New York v Delafield 246 Corp.*, 236 AD2d 11, 25 [1st Dept 1997]).

Thus, we cannot agree with 330 West that, even if Oaks Corp defaulted in its obligations to the City, 330 West is not responsible for breaches of its predecessor with respect to the duty to rehabilitate the blighted property. Rather, the land use restrictions on the property are rooted in the unchallenged finding that the "status of the [property] tends to impair or arrest the sound growth and development of the municipality" and, as such, the duty is not extinguished when the property is so readily transferred, as it was here. Moreover, the new owner was on notice of this responsibility prior to taking title, both from the clear language of the deed between the City and Oaks Corp describing the property's UDAAP status, and from the filed lawsuit and lis pendens.

Lastly, the third *Neponsit* factor, privity of estate, has been met as there exists a direct chain of title running from the City to Oaks Corp to 330 West. Whether such privity exists as to 328 Owners Corp. is immaterial, as 328 Owners Corp. has sought the identical relief being granted to the City.[6]

Under the circumstances presented here and the integrated statutory authority for the sale of this property, we hold that the land use restrictions included in the language of the deed and mandated by statute run with the land. Certainly, this need not be "in perpetuity" (*see* dissenting op at 385, 387). If the project identified in the deed recitals is accomplished, the restrictions may expire by their own terms (*see Booth v Knipe*, 225 NY 390, 396 [1919] [recognizing that a covenant running with the land "may not last forever"]). In any event, the current or any

---

6. Both Supreme Court and the Appellate Division found that plaintiff, 328 Owners Corp., has standing as an adjacent property owner, to bring this lawsuit.

future owner may seek extinguishment of the land use restrictions under RPAPL 1951 to the extent it desires to make different use of the property.[7]

As for the City's request to limit the property use to conservation purposes only, we find little merit to its argument. References in the deed to article 16 of the General Municipal Law—other than a single reference in the project summary—do not make such a limiting distinction. The parties' remaining contentions are also without merit.

Accordingly, the order of the Appellate Division should be reversed, with costs, and the amended order and judgment of Supreme Court reinstated.

PIGOTT, J. (dissenting). I respectfully dissent because the majority's interpretation of the Urban Development Action Area Act (UDAAA) places indefinite use restrictions on property sold pursuant to that Act when no such restrictions were intended. In my view, the Appellate Division's order dismissing 328 Owners Corp.'s action and the City's cross claims against the subsequent purchaser should be affirmed.

The City and 328 Owners Corp. argue that because the deed and its accompanying documents were prepared as part of the accelerated Urban Development Action Area Project (UDAAP), 330 West Oaks Corp. (Oak Corp.), the tenant group that purchased the property, and the City intended that the property would be used for certain, specific purposes in perpetuity. While those documents may, indeed, evidence an intent that Oaks Corp. be bound by certain use restrictions, they show no evidence of an intent that a subsequent purchaser, like 330 West 86th St., LLC (330 West), be so bound.

This is clear from the language of the deed itself. As the majority notes, the deed "must be construed according to the intent of the parties, so far as such intent can be gathered from the whole instrument, and is consistent with the rules of law" (Real Property Law § 240 [3]). In my view, the language of the deed is unambiguous and evidences the parties' intent that Oaks Corp., and only Oaks Corp., be subject to the use restrictions. Specifically, the deed's "Recital" clauses state that the property is conveyed pursuant to General Municipal Law article 16 and, in

---

7. RPAPL 1951 provides a mechanism for extinguishing land use restrictions when "the purpose of the restriction has already been accomplished or, by reason of changed conditions or other cause, its purpose is not capable of accomplishment, or for any other reason."

particular, that the project "undertaken by [Oaks Corp., as sponsor] . . . consists solely of the rehabilitation or conservation of existing private or multiple dwellings or the construction of one to four unit dwellings." The recitals describe the authority under which the City acted when it deeded the property to Oaks Corp. and the City's understanding that Oaks Corp. would use the property for those purposes. These recitals, however, do not constitute covenants or agreements binding on any subsequent purchaser. Nowhere is it mentioned in the deed, either in these recitals or the body thereof, that any subsequent purchaser is limited in its use of the property. Thus, contrary to the majority's conclusion, it is of no moment that 330 West may have had "notice" of the restrictions meant to be imposed only on Oaks Corp. at the time it purchased the property.

Indeed, the only covenant in the deed that applies to a subsequent purchaser, like 330 West, is that which prohibits "successors and assigns, and every successor in interest" from engaging in discriminatory conduct relative to the use, sale or leasing of the property. It is, of course, axiomatic that purchasers of real property are subject to all applicable zoning ordinances and land use restrictions that a municipality in its lawmaking authority may choose to impose on property located within its boundaries. But limitations found within a deed are a different matter. In such cases, the municipality is acting as a vendor; and, like all vendors, it must strictly adhere to the Real Property Law when it comes to the alienation of real property.

Even assuming that the deed could somehow be read as containing covenants and agreements requiring 330 West to abide by the use restrictions agreed to by Oaks Corp., we have held that express recitals of affirmative covenants that "run with the land" are "generally not binding upon subsequent grantees of the promisor unless [the] well-defined and long-established legal requisites" contained in our holding in *Neponsit Prop. Owners' Assn. v Emigrant Indus. Sav. Bank* (278 NY 248 [1938]) have been met (*Eagle Enters. v Gross*, 39 NY2d 505, 507 [1976], citing *Nicholson v 300 Broadway Realty Corp.*, 7 NY2d 240, 244 [1959]). *Neponsit* requires that, in order for a covenant to run with the land, the original grantor and grantee must so intend (*see Neponsit*, 278 NY at 255). In addition, there must be privity of estate between the party seeking to enforce the covenant and the party against whom the covenant is sought to be enforced, and the covenant must "touch and concern" the land upon which it runs (*id.* at 254-255). Here, the first prereq-

uisite of *Neponsit* has not been met because, strictly construing the "covenants" against the City and 328 Owners Corp. as we must (*see Buffalo Academy of Sacred Heart v Boehm Bros.*, 267 NY 242, 249 [1935]), it is readily apparent that neither Oaks Corp. nor the City intended any entity other than Oaks Corp. to be bound by the use restrictions. The parties, and the City in particular as drafter of the deed, could easily have crafted a deed binding successors of Oaks Corp. to the use restrictions; but that was not done here.

General Municipal Law § 695 (5) further supports the finding that the use restrictions now sought to be imposed apply only to the original purchaser. That statute provides that any deed disposing of real property pursuant to section 695

> "shall contain provisions requiring the purchaser, lessee or grantee to . . . rehabilitate . . . conserve . . . , reconstruct or redevelop such property in accordance with the [UDAAP,] as approved by the [City Council,] within a definite and reasonable period of time subject to the terms of the . . . deed relating thereto between the municipality and the sponsor, and shall contain provisions insuring the use of such real property for purposes consistent with such [UDAAP]."

Thus, even if section 695 (5) is "construed" into the deed, it does not prohibit a subsequent purchaser from redeveloping the property. There is no language in the statute that mandates property initially sold pursuant to the accelerated UDAAP procedure remain, as is argued here, a one to four unit dwelling in perpetuity, or that once a purchaser rehabilitates or conserves the premises it cannot convert the premises to a different use. To the contrary, the City may sell a property pursuant to the accelerated UDAAP procedure when such sale "requires the effectuation of an urban development action area project with[in] a definite and reasonable period of time" (General Municipal Law § 695 [2] [b]). Thus, while a purchaser must effectuate a project within a reasonable time, there is no requirement that once the project is completed the property is forever restricted from becoming something else.

The purpose of article 16 is the swift and quick rehabilitation or conservation of property, and it should not be construed to prohibit future development. If the position of the City and 328 Owners Corp. is taken to its logical conclusion, any property that has been sold by the City pursuant to the accelerated

UDAAP procedure may now be subject to attack because the property has been changed from its initial use, regardless of how many years have passed, how many times it has been sold, and how pristine its present condition. That is not the result the Legislature intended when it enacted article 16, the purpose of which is to "provide incentives for the correction of . . . substandard, insanitary, blighted, deteriorated or deteriorating conditions . . . by the clearance, replanning, reconstruction, redevelopment, rehabilitation, restoration or conservation of such areas" (General Municipal Law § 691).

Notably, the only conditions found in the deed—that the building code violations be cured and that two-year leases be offered to current tenants at a fixed rate—are temporal and directed explicitly at Oaks Corp. The program under which the property was conveyed mandates these conditions and the City, had it chosen to do so, could have taken appropriate action against Oaks Corp. to enforce them. The same can be said about Oaks Corp.'s purported failure to comply with the use restrictions. The City did not avail itself of the enforcement mechanisms specified in the deed, i.e. suing for rescission of the deed or for breach of the promises contained therein. Thus, the purpose behind the accelerated UDAAP process was not subverted by the sale of the property to 330 West, as the majority implies. Rather, it was the City's draftsmanship of the deed and its failure to enforce the conditions and use restrictions against Oaks Corp. that subverted the UDAAP process.

Chief Judge KAYE and Judges GRAFFEO, READ, SMITH and JONES concur with Judge CIPARICK; Judge PIGOTT dissents and votes to affirm in a separate opinion.

Order reversed, etc.