MARIA J. HARRISON et al., Appellants, v WESTVIEW PARTNERS, LLC, et al., Respondents, et al., Defendants. [913 NYS2d 364]—

Spain, J.P. Appeals (1) from an order of the Supreme Court (O'Shea, J.), entered September 16, 2009 in Tompkins County, which, among other things, denied plaintiffs' motion for a preliminary injunction, and (2) from an order of said court, entered January 6, 2010 in Tompkins County, which, among other things, upon reargument, adhered to its prior order.

In this action, we are called upon to decide whether a covenant to provide and maintain a water line under and along property owned by defendant Westview Partners, LLC in the

Town of Lansing, Tompkins County for the benefit of plaintiffs' parcels, runs with the land and, thus, is binding on Westview and defendant Boris Simkin, sole owner of Westview, as successors in interest to the original covenantor.

Plaintiffs are neighboring landowners who receive their water from the water line at issue. The subject line begins at the municipal water line running along the state highway, which is accessible from Westview's property but not plaintiffs', passes underground through Westview's land and leads to a distribution box from which each plaintiff maintains a private line that delivers water into his or her home. There is no water district directly accessible to plaintiffs from which they can maintain their own direct water lines. Westview—like plaintiffs or plaintiffs' predecessors in title—acquired its property from defendant Jay Orear.

Initially, Orear owned a 45-acre parcel of land and sold the first of the three lots now owned by plaintiffs in the late 1970s to plaintiff Joann H. Beischer. In that deed, Orear covenanted "to provide, maintain, repair and replace when necessary an adequate water main and distribution system for municipal water service" and "not to impair or decrease the amount or pressure of water provided."[1] Plaintiff Maria Harrison, who purchased her property from Carol Kammen, was promised "[r]ights to an adequate water main and distribution system for municipal water service" restated as described in Kammen's deed from Orear, which was virtually identical to that of Beischer. The last lot at issue was owned by Orear's ex-wife, Virginia Watts, and is now held in trust by plaintiff Peter Sayet, as trustee for the Virginia Watts Revocable Trust. The deed from Orear to Watts is silent on the issue of water.[2]

For years after these transfers, Orear fulfilled his promises to maintain the water line in good repair. In 2005 and 2007, Orear sold the rest of his original parcel (hereinafter the Westview lots) to Westview in two conveyances. Contained within the 2005 deed to Westview was Orear's promise to "retain responsibility for the maintenance, upkeep and payment for all utilities associated with the water meter currently located on the premises conveyed herein until such a time as the water system

---

1. This covenant was restated in a deed conveying the property from Beischer to plaintiff Tompkins Trust Company, as trustee of the Second Restated Trust Agreement for Joann H. Beischer.

2. Inasmuch as a single water line furnishes water to a common distribution box, the relief requested is not divisible between plaintiffs and, accordingly, we need not address the significance, if any, of the omission of the covenant from this deed.

is replaced by a water main through the property to service properties located to the west." The 2007 deed imposed similar obligations on Orear, but such obligations were set to terminate at the earlier of two years from the execution of the deed or the construction of a new water main by Westview. As the date for termination of Orear's obligation as described in the 2007 deed neared, Westview sent a proposal to plaintiffs whereby the parties would share the expense of installing a new water main. At one point in 2009, Simkin shut the water off to force discussion of the issue. No agreement was reached.

Plaintiffs commenced the instant action in July 2009 seeking, among other things, preliminary and permanent injunctions to restrict Westview and Simkin from interfering with the flow of water to their residences and to enforce the affirmative covenant to "provide, maintain, repair and replace when necessary an adequate water main" as against Westview, Simkin and/or Orear. Supreme Court denied plaintiffs' motion for a preliminary injunction and adhered to that decision after reargument. Plaintiffs appeal from both the original order denying the preliminary injunction and the order after reargument, and we now reverse.

Supreme Court declined to issue a preliminary injunction because it found that defendants could not make the requisite showing of "a probability of success on the merits" (*Nobu Next Door, LLC v Fine Arts Hous., Inc.*, 4 NY3d 839, 840 [2005]; *see* CPLR 6301). This finding was premised on Supreme Court's conclusion that the covenants contained within the deeds did not run with the land but, rather, were personal covenants binding only on Orear as the covenantor and not on subsequent owners such as Westview.

It is well settled that "affirmative covenants may be enforced against subsequent holders of the originally burdened land whenever it appears that (1) the original covenantor and covenantee intended such a result; (2) there has been a continuous succession of conveyances between the original covenantor and the party now sought to be burdened; and (3) the covenant touches or concerns the land to a substantial degree" (*Nicholson v 300 Broadway Realty Corp.*, 7 NY2d 240, 245 [1959]; *see Neponsit Prop. Owners' Assn. v Emigrant Indus. Sav. Bank*, 278 NY 248, 255 [1938]; *Johnson v Nisbet*, 68 AD3d 1333, 1336 [2009], *lv denied* 14 NY3d 704 [2010]). The second prong of the test—privity of estate—is not in dispute here. Hence, we must determine whether Orear and the original grantees intended for the covenant to run with the land and, if so, whether this covenant "touches or concerns" the land to a substantial degree.

In ascertaining intent at the time that the covenant was created, we turn first to the language of the deed (*see Brody v St. Onge*, 167 AD2d 671, 672-673 [1990]; *Clarke v Caldwell*, 132 AD2d 171, 173 [1987]). In two of the deeds originally executed by Orear, there is language immediately preceding the covenant language which expresses intent that the promise be binding on the sellers as well as their heirs and assigns. Although not necessarily dispositive, this clear language is strong evidence that the grantor and grantees intended that the covenants would run with the land (*see Brody v St. Onge*, 167 AD2d at 673).

In addition, we find ample evidence of intent from the circumstances in existence at the time the covenants were created that also support the conclusion that they were intended to run with the land. The benefitted parcels have no source of water other than through the Westview lots; indeed, because plaintiffs' lots are positioned along the edge of a gorge, the prospect of drilling a productive well is poor at best. Further, when defendant Town of Lansing approved Orear's subdivision plan in the 1970s, it implicitly relied on the continuing obligation of the owner of the property with access to the municipal water main—Orear at the time—to provide a water line for the service of the three lots, now owned by plaintiffs, so that each lot owner "would be permitted to hook up [his or her] property for water . . . through a central box." Finally, it is significant that the covenant to maintain the line is expressly limited—in the 1984 deed to Kammen—by the language "until the obligation to maintain same is taken over by a municipal water system." That this promise was intended to end should the municipality provide a direct line of water to the benefitted parcels evinces an intent that the covenant would exist until it was no longer necessary (*cf. Sync Realty Group, Inc. v Rotterdam Ventures, Inc.*, 63 AD3d 1429, 1431 [2009]).

We do not view Orear's agreements in 2005 and 2007 to continue to maintain the waterline as evidence of Orear's intention for the covenants to be personal. Indeed, Orear's promises to Westview to continue maintaining the waterline would have been meaningless unless Westview had become burdened by the existing covenants when it purchased the land. Likewise, Westview's reliance on the fact that the covenants could expire should municipal water become directly available is unavailing; a covenant need not be permanent to run with the land (*see 328 Owners Corp. v 330 W. 86 Oaks Corp.*, 8 NY3d 372, 384 [2007]; *Booth v Knipe*, 225 NY 390, 396 [1919]). In fact, the Court of Appeals has voiced the opposite, stating that where a covenant contains no outside limitation on its duration, it may "fall[ ]

prey to the criticism that it creates a burden in perpetuity, and purports to bind all future owners, regardless of the use to which the land is put" (*Eagle Enters. v Gross*, 39 NY2d 505, 510 [1976]).

Finding, therefore, that Orear and the original grantees intended for the covenant to run with the land, we turn to the question of whether the covenant substantially touches or concerns the land. "[A] covenant should be held to touch or concern the land, to run with the land, if it affects 'the legal relations—the advantages and the burdens—of the parties to the covenant, as owners of particular parcels of land and not merely as members of the community in general, such as taxpayers or owners of other land' " (*Nicholson v 300 Broadway Realty Corp.*, 7 NY2d at 245, quoting *Neponsit Prop. Owners' Assn. v Emigrant Indus. Sav. Bank*, 278 NY at 257; *see Johnson v Nisbet*, 68 AD3d at 1336). Significantly, "whether a particular covenant is sufficiently connected with the use of the land to run with the land, must be in many cases a question of degree" (*Neponsit Prop. Owners' Assn. v Emigrant Indus. Sav. Bank*, 278 NY at 258), "dependent on the particular circumstances of a case" (*Eagle Enters. v Gross*, 39 NY2d at 510).

Here, we find that the covenants requiring maintenance of the water line and prohibiting interference with water distribution "substantially alter" the "legal rights which otherwise would flow from ownership of land and which are connected with the land" and, thus, touch or concern the land (*see Neponsit Prop. Owners' Assn. v Emigrant Indus. Sav. Bank*, 278 NY at 258). In particular, our decision is supported by *Nicholson v 300 Broadway Realty Corp.* (7 NY2d 240 [1959], *supra*), where the Court of Appeals held that a covenant to furnish heat and maintain pipes for that purpose for the benefit of a building on a neighboring property touched or concerned the land because it impacted the legal relations of the parties to the covenant as owners of particular parcels of land (*id.* at 246). Here, in 1975 the Town of Lansing relied upon the covenants in question in allowing Orear to subdivide plaintiffs' lots, plaintiffs' use of their lots is dependent upon the water line and, given that the line runs under Westview's property, the servient parcel is also directly impacted by the covenant. Hence, we hold that the legal rights stemming from the ownership of the parties' properties are substantially altered because of the covenants and, therefore, the covenants touch and concern the land (*see 328 Owners Corp. v 330 W. 86 Oaks Corp.*, 8 NY3d at 384; *Nicholson v 300 Broadway Realty Corp.*, 7 NY2d at 245-246; *see also City of New York v Delafield 246 Corp.*, 236 AD2d 11, 25-26

[1997], *lv denied* 91 NY2d 811 [1998]; *cf. Johnson v Nisbet*, 68 AD3d at 1336).

Given our conclusion that plaintiffs can demonstrate a likelihood of success on the merits as against Westview and Simkin, the matter should be remitted to Supreme Court for consideration of the other factors necessary to the grant of a preliminary injunction (*see* CPLR 6301; *Nobu Next Door, LLC v Fine Arts Hous., Inc.*, 4 NY3d at 840).

Kavanagh, Stein, McCarthy and Egan Jr., JJ., concur. Ordered that the orders are reversed, on the law and facts, with costs, and matter remitted to the Supreme Court for further proceedings not inconsistent with this Court's decision.