*State of New York*
*Supreme Court, Appellate Division*
*Third Judicial Department*

Decided and Entered:  March 31, 2016                    521430
_____

NIAGARA MOHAWK POWER
    CORPORATION, Doing Business
    as NATIONAL GRID,
                         Appellant,

        v

ALLIED HEALTHCARE PRODUCTS,              MEMORANDUM AND ORDER
    INC.,
                         Respondent,

        and

ALBANY ENGINEERING
    CORPORATION,
                         Appellant.
_____

Calendar Date:   February 11, 2016

Before:  Garry, J.P., Egan Jr., Lynch, Devine and Clark, JJ.

_____

        Bond, Schoeneck & King, PLLC, Albany (Stuart F. Klein of
counsel), for Niagara Mohawk Power Corporation, appellant.

        Hug Law, PLLC, Troy (Matthew C. Hug of counsel), for Albany
Engineering Corporation, appellant.

        Whiteman Osterman & Hanna LLP, Albany (Robert T. Schofield
of counsel), for respondent.

_____

Devine, J.

        Appeal from an order of the Supreme Court (Platkin, J.),
entered October 2, 2014 in Albany County, which, among other
things, granted a motion by defendant Allied Healthcare Products,

Inc. for summary judgment dismissing, among other things, the second amended complaint against it.

The case before us deals with the continued viability of an affirmative covenant, dating to the dawn of the 20th century, to provide free power to manufacturing facilities on property now owned by defendant Allied Healthcare Products, Inc. (hereinafter AHP). The power covenant first arose in 1899, when Anna Frisbee and Charles Frisbee, who owned textile mills on property adjacent to the Stuyvesant Falls on the Kinderhook Creek, deeded the bulk of their water rights to the Colonial Trust Company. Colonial Trust acquired the rights in anticipation of the construction of a hydroelectric power generation facility that would provide electricity for a railroad operated by the Albany and Hudson Railroad Company. Inasmuch as an electric grid did not yet exist in the area, and the conveyance meant that the Frisbees' mills could no longer be powered by water from the creek, Colonial Trust agreed to "furnish[] free of cost all the [water or electric] power necessary for properly running the mills." The Frisbees further covenanted to deed up to four acres of land to Colonial Trust so that it could construct and maintain facilities needed for the project. The interests conveyed in the 1899 deed were apparently transferred from Colonial Trust to a power company associated with the railroad company, and a hydroelectric facility with supplemental oil-powered turbines was completed in 1900.

Litigation followed and, in 1903, a settlement agreement was recorded with the Columbia County Clerk that amended the 1899 deed in various respects. The agreement altered the power covenant to provide that, subject to notice and usage limitations, the Frisbees "or the survivor of them, their heirs or assigns shall, at all times hereafter, be furnished free of costs at the end of a wire or electrical conductor . . . electric current for running motors . . . in [the] mills, or for other mechanical or manufacturing purposes on [their] premises." The agreement also required the Frisbees to fulfill their commitments in the 1899 deed by conveying an easement to the railroad company for the purpose of accessing penstocks running across the Frisbees' property on the eastern bank of the creek, as well as four acres of land to be detailed by the railroad. The Frisbees

conveyed the penstock easement and the four-acre parcel to the railroad company later in 1903.

AHP now owns the Frisbees' property and manufactures medical products in the mills. The hydroelectric facility and associated property interests were owned by plaintiff for many years but, as a result of plaintiff divesting its interests in hydroelectric generation plants in the 1990s, those property interests are no longer under common ownership. Plaintiff continues to own the four-acre parcel, where it maintains electricity transmission and distribution lines. Defendant Albany Engineering Corporation acquired the remaining interests connected to the hydroelectric power facility in 2008 and, after a long period of inactivity, brought that facility back into operation in 2012. Plaintiff purchases whatever electricity is generated by Albany Engineering at the hydroelectric facility. Plaintiff has also historically provided — and, pursuant to a preliminary injunction issued in this action, continues to provide — AHP a free allotment of electricity pursuant to the power covenant.

Plaintiff commenced this action in 2009 and sought, among other things, a declaration that the power covenant was unenforceable and that it had no obligation to supply free power to AHP. Albany Engineering answered and cross-claimed against AHP, arguing that the power covenant was unenforceable or, in the alternative, that only plaintiff was bound by it. AHP answered and asserted counterclaims and cross claims seeking, among other things, a declaration that the power covenant remains enforceable. Plaintiff and Albany Engineering thereafter moved for summary judgment on their claims to have the power covenant declared unenforceable. AHP, in turn, moved for summary judgment dismissing the complaint and cross claims against it. Supreme Court rejected the motions of plaintiff and Albany Engineering, concluded that the power covenant remained enforceable, and granted AHP's motion for summary judgment. Plaintiff and Albany Engineering appeal.

"Regardless of the express recital in a deed that a covenant will run with the land, a promise to do an affirmative act contained in a deed is generally not binding upon subsequent

grantees of the promisor unless certain well-defined and long-established legal requisites [sic] are satisfied" (Eagle Enters. v Gross, 39 NY2d 505, 507 [1976] [citations omitted]; see Nicholson v 300 Broadway Realty Corp., 7 NY2d 240, 244 [1959]). For such a covenant to run with the land, it is necessary to show "that (1) the original covenantor and covenantee intended such a result; (2) there has been a continuous succession of conveyances between the original covenantor and the party now sought to be burdened; and (3) the covenant touches or concerns the land to a substantial degree" (Nicholson v 300 Broadway Realty Corp., 7 NY2d at 245; see Orange & Rockland Util. v Philwold Estates, 52 NY2d 253, 262 [1981]; O'Neill v Pinkowski, 92 AD3d 1063, 1064 [2012]).

"In ascertaining intent at the time that the covenant was created, we turn first to the language of the deed" and, contrary to the contentions of plaintiff and Albany Engineering, that language leaves no doubt as to the parties' intent (Harrison v Westview Partners, LLC, 79 AD3d 1198, 1201 [2010] [citations omitted]). As modified by the 1903 settlement agreement, the language in the 1899 deed was not a vague reference to bind the "heirs and assigns" of the purchasers, but specifically stated that the power covenant "was intended by the parties .  . to be and has, at all times, been a covenant running with the lands, water rights, and privileges hereby granted, and binding upon the persons or corporations who should from time to time, be the owners thereof" (see 328 Owners Corp. v 330 W. 86 Oaks Corp., 8 NY3d 372, 383 [2007]; Pepe v Antlers of Raquette Lake, Inc., 87 AD3d 785, 787 [2011]; cf. Kingston Model R.R. Club, Inc. v Eleven Main Group, LLC, 123 AD3d 1193, 1194 [2014]). The omission of the word "successors" from this clear statement of intent is, at worst, a technical failing that in no way muddies its meaning (see Orange & Rockland Util. v Philwold Estates, 52 NY2d at 262; Harrison v Westview Partners, LLC, 79 AD3d at 1201; Tarantelli v Tripp Lake Estates, 23 AD2d 905, 907 [1965]). As for the question of privity, the power covenant is not recited in the 1903 deed conveying the four-acre parcel that now belongs to plaintiff and the penstock easement now held by Albany Engineering, but such is not dispositive. The Frisbees first promised to convey those interests in the 1899 deed and, as amended by the 1903 settlement agreement, that deed states that

the specific conveyances to follow were "in consideration as aforesaid, stipulated and agreed by and between the parties." Accordingly, the power covenant was intended to run with the lands and property interests now held by plaintiff and Albany Engineering (see Witter v Taggart, 78 NY2d 234, 238 [1991]; Pepe v Antlers of Raquette Lake, Inc., 87 AD3d at 787).

The question of whether the power covenant touches and concerns the land "is one of degree, dependent on the particular circumstances of a case" (Eagle Enters. v Gross, 39 NY2d at 510), and depends upon whether the power covenant can be said to substantially alter "the legal rights which otherwise would flow from ownership of land and which are connected with the land" (Neponsit Prop. Owners' Assn. v Emigrant Indus. Sav. Bank, 278 NY 248, 258 [1938]; accord Nicholson v 300 Broadway Realty Corp., 7 NY2d at 245). The power covenant was part of the consideration afforded the Frisbees for giving up their right to power their mills with water from Kinderhook Creek and granting other property interests to the owner or owners of the hydroelectric facility, and required that those owners would divert electricity generated at the facility for the benefit of the mills.[1] The Frisbees therefore obtained "a right, not possessed by other landowners, of having" electricity generated at the hydroelectric facility supplied to power the manufacturing occurring at the mills (see Nicholson v 300 Broadway Realty Corp., 7 NY2d at 246). The power covenant accordingly touches and concerns the land (see 328 Owners Corp. v 330 W. 86 Oaks Corp., 8 NY3d at 384; Nicholson v 300 Broadway Realty Corp., 7 NY2d at 246; Miller v Clary, 210

---

[1] The power covenant did not specifically require that the supplied electricity come from the hydroelectric facility. "The [covenant] must be considered in the light of the circumstances existing at the time of its execution," however, and the president of Albany Engineering, a licensed professional engineer, testified that electric transmission lines were not in general use from 1899 to 1903 (S & S Media v Vango Media, 84 AD2d 356, 358 [1982]). He further averred that his review of the available technical documents revealed that all of the electricity initially provided under the terms of the power covenant came from the hydroelectric facility.

NY 127, 131 [1913]).

While the general requisites of an affirmative covenant running with the land have been met, that does not end the matter. "The affirmative covenant is disfavored in the law because of the fear that this type of obligation imposes an 'undue restriction on alienation or an onerous burden in perpetuity'" (Eagle Enters. v Gross, 39 NY2d at 510, quoting Nicholson v 300 Broadway Realty Corp., 7 NY2d at 246). The power covenant has no express limitation on its duration, and "it may 'fall[] prey to the criticism that it creates a burden in perpetuity, and purports to bind all future owners, regardless of the use to which the land is put'" (Harrison v Westview Partners, LLC, 79 AD3d at 1201-1202, quoting Eagle Enters. v Gross, 39 NY2d at 510; see Nicholson v 300 Broadway Realty Corp., 7 NY2d at 246). AHP rightly points out that the power covenant may be implicitly "conditioned upon the continued existence of" a hydroelectric facility capable of supplying the required power to ongoing manufacturing at the mills (Eagle Enters. v Gross, 39 NY2d at 510; see Nicholson v 300 Broadway Realty Corp., 7 NY2d at 246). Suffice it to say, those conditions have only been intermittently met as historical matter and are not met now. The hydroelectric power facility was not in operation from 1994 to 2012 and, while AHP attempts to minimize the fact, there was not constant manufacturing activity at the mills over the course of the last century. The record further shows that the hydroelectric facility, for both technical and legal reasons, cannot supply consistent or usable electricity directly to the mills. To find that the power covenant remains enforceable under these circumstances would render it an "onerous burden in perpetuity" disfavored by the law, as it would reach beyond any implied durational requirements and overlook the very real changes in the hydroelectric facility and the manner for distributing electricity that defeat the original purpose of the power covenant (Nicholson v 300 Broadway Realty Corp., 7 NY2d at 246; see Miller v Clary, 210 NY at 135-136). This result cannot be countenanced and, as such, the power covenant is unenforceable.

AHP's alternative argument, that plaintiff and Albany Engineering are equitably estopped from challenging the power

covenant given their acquiescence in its continued viability, is unpersuasive. Equitable estoppel as a doctrine exists "to prevent the infliction of unconscionable injury and loss upon one who has relied on the promise of another" (American Bartenders School v 105 Madison Co., 59 NY2d 716, 718 [1983]; see Fundamental Portfolio Advisors, Inc. v Tocqueville Asset Mgt., L.P., 7 NY3d 96, 106 [2006]). The continued manufacturing presence of AHP at the mills is not due to it being lulled into a false sense of security by the continued provision of free electricity; indeed, after a lengthy hiatus in the 2000s, AHP elected to refit the mills and resume manufacturing despite being aware that questions existed as to whether the power covenant remained in force (see Provident Loan Socy. of N.Y. v 190 E. 72nd St. Corp., 78 AD3d 501, 502-503 [2010]). As for the question of injury, one of AHP's vice-presidents testified that requiring payment for the electricity used by it would not materially affect the company in general and would be unlikely to affect the manufacturing operations at the mills. Given that the terms of the 1899 deed as amended by the 1903 settlement agreement "fixed the rights of the parties, and mere failure to assert same by either side would not create an estoppel," one will not lie here (La Mont Corp. v La Mont., 255 App Div 394, 395 [1938]; cf. Gould v Partridge, 52 App Div 40, 45-46 [1900]). Thus, the summary judgment motions of plaintiff and Albany Engineering should have been granted.

The remaining arguments advanced by the parties, to the extent that they are not rendered academic in light of the foregoing, have been examined and rejected.


Garry, J.P., Egan Jr., Lynch and Clark, JJ., concur.

ORDERED that the order is reversed, on the law, without costs, motion of defendant Allied Healthcare Products, Inc. denied, motions of plaintiff and defendant Albany Engineering Corporation granted, summary judgment awarded to plaintiff and defendant Albany Engineering Corporation, and it is declared that the power covenant at issue is unenforceable.

ENTER:

Robert D. Mayberger
Clerk of the Court